## No. 2418.

### C. BEHEE *v.* MISSOURI PACIFIC RAILWAY COMPANY.

1. LIBEL—MALICE—PRIVILEGED COMMUNICATIONS.—When the publication is privileged and believed to be true, the prima facie case of libel from the false and defamatory publication, is deemed to have been fully met, and malice in fact must be established by other evidence, as by the style or manner of the writing or by extraneous facts.

2. SAME—EVIDENCE.—Malice may be proved by circumstantial evidence, and in such cases malice is inferred from the evidenciary facts.

3. SAME—CHARGE.—The court, after defining express malice to be a "bad, wicked or evil intent," instructed the jury that such malice "could not be presumed, but must be proved like any other fact." *Held*, error, in that from the latter clause the jury might have understood that malice could only be established by direct evidence.

4. SAME.—The court should not indicate to the jury any fact from which they could infer malice, but they should be informed that it could be inferred from facts and circumstances.

5. SECONDARY EVIDENCE—PREDICATE FOR.—It was shown that a copy of the black list (sought to be proved) had been in possession of an assistant superintendent of the defendant railway company; that said assistant had returned the paper to the general superintendent, and notice to produce had been served upon defendant. *Held*, that the predicate was sufficient to admit secondary evidence to the contents of such paper or list.

6. SUBSEQUENT PUBLICATIONS IN LIBEL.—Subsequent publications of the libel or other like publications are admissible to show the animus of the defendant.

APPEAL from Tarrant. Tried below before the Hon. R. E. Beckham.

This is a suit by C. Behee against the Missouri Pacific Railway Company to recover damages on account of a libel published and circulated concerning him, relative to his trade and calling. Said libel was alleged to have been published in November or December, 1883, and continuously from then on, circulated by defendant in Tarrant county, Texas, and other counties of said State, as well as in other States of the American Union, a great many copies of the same being circulated.

The libelous document was alleged to be a book or printed pamphlet, known as the Black List in railroad circles, with the following on its title page:

"THE MISSOURI PACIFIC RAILWAY COMPANY.
(Leased and Operated Lines.)

LIST OF EMPLOYES DISCHARGED FOR CAUSE,

During months of April, May, June, July, August, S p'·····ber and October, 1883."

And on the third page the following language:

"Date.     Division.     Name.     Occupation.     Cause.
Sept.     M., K. & T.     Behee, C.     Brakeman.     Incompetent."

Plaintiff alleged that the libel caused him to be repeatedly discharged from service of railroads, and prevented him from obtaining employment on any railroad in the country; that the libel was false and malicious; that he had long been engaged in railroading, and was skilled in such work; that he lost time in seeking employment, suffered injury in his reputation and in his mind and feelings on account of the libel, and claimed actual damages, fifteen thousand dollars; vindictive damages, ten thousand dollars.

Defendant pleaded general denial, privileged communication in that if plaintiff's name was on the black list, the list was only printed for the private information of heads of departments and officers intrusted with the duty of employing and discharging its servants in the conduct of its lawful business as a carrier of freight and passengers, and the list was not communicated to the general public or to other railway companies; that the list was designed to protect the service from inefficient servants, and that it was therefore a privileged communication. The case was tried by a jury, who returned a verdict for defendant. Plaintiff appealed from the judgment rendered.

In 1883, besides the Missouri Pacific railroad proper, the defendant had leased and operated the Missouri, Kansas & Texas, the International & Great Northern and the Galveston, Houston & Henderson railway lines. Plaintiff was employed

on the Missouri, Kansas & Texas road as a brakeman from September 10 to September 25, 1883, when he quit work of his own accord; and on October 1 following was employed on the International & Great Northern road as a freight conductor, and on December 12, 1883, he was discharged because his name was on what is termed in railroad circles the "black list," that is, a list of servants of the Missouri Pacific Company showing employes discharged for cause. The cause of plaintiff's discharge, as stated in the list, was incompetency. These lists are kept for information of the heads of departments and for private information to subordinate officers whose duty it is to employ and discharge servants of the company. There is some discrepancy in the testimony as to whether plaintiff's name was on the list, but Henry Funnell, at the time assistant superintendent of the International & Great Northern Railroad line, says he discharged plaintiff because his name so appeared on the list furnished him by Superintendent Joseph Herrin, to whom it was afterwards returned. Plaintiff had a certificate of discharge from Train Master Ray, on the Missouri Pacific Railway, and after being so discharged by the International & Great Northern road, he came to Ray with a statement from the officers of the International & Great Northern, showing that he had been discharged for cause. Ray then issued him a certificate of clearance, or wrote a letter of clearance for him.

After his discharge, plaintiff obtained work on the New Orleans & Pacific Railroad as freight conductor, held the position until the twenty-eighth of January, 1884, and says he was then by that road discharged because his name was on the said black list. He produced his letter of clearance from Ray, but was told it would not do, as his name still appeared on the list. It does not appear from the evidence how the New Orleans & Pacific Railroad Company came into possession of the list; it was not leased or operated by defendant. Plaintiff then went to Denison, Texas; was employed as a switchman on defendant's road, and was discharged again after four days work, because of the black list. Plaintiff swore he was a skilled railroad freight conductor, switchman and brakeman, and for the last seven months has been foreman on the yard at Houston, Texas.

The evidence of defendant showed that the lists of discharged hands was for the information and convenience of its own road

and lines controlled by it, and were never sent to any persons except to subordinate officers charged with the duty of employing and discharging its agents and servants.

The court below instructed the jury "that the publication of the list, as shown by the evidence, was a privilege which defendant had, provided there was no evil intention on the part of the defendant in publishing the same," and appellant claims that the court erred in the charge in allowing the question of privilege to be considered at all under the facts of the case and the form of the libelous document, and also in limiting malice to evil intent.

The instructions given and refused, in which the action of the court was excepted to, are given in the opinion.

Plaintiff took the deposition of one Fred Richmond and propounded to him the following interrogatory: "If you had a black list in your possession published by defendant in the year 1884, in which plaintiff's name is printed, and the said list is not within your possession or control, or is lost or destroyed, please give the exact language on the title page and state whether said list was written or printed, and especially in what form it was gotten up?" The answer was: "I did have in my possession during the latter part of 1884, a black list published by defendant in 1884, and the said list is not now in my possession, or under my my control." He then gives the language of the title page, and otherwise answers the question. Notice was given long before the trial to defendant to produce the list. Plaintiff offered to read the answer to show malice of the defendant by a republication of the list. On objection of defendant the court excluded the answer because no sufficient predicate had been laid to permit the intoduction of secondary evidence. Plaintiff saved an exception by bill No. 1.

The following question was also asked of the same witness: "If you say plaintiff's name was published in 1884 by defendant, then please state if there was any language printed in connection with plaintiff's name? If yea, what the language was." The answer was that the language in the writing was "Chas. Behee was blackballed off the M. K. & T. R. R. for incompetency," etc. The court sustained the defendant's objection to the answer for the same reason as before, and because the matter was not pleaded by the plaintiff. Plaintiff saved exception by bill No. 2.

The following was also asked of the same witness: "If in

answer to third interrogatory, you say you have seen a black list with plaintiff's name printed therein, published in 1884, state what month it was published in." The witness answered that it was published in March, 1884. The court excluded the answer because no predicate was laid for the introduction of secondary evidence. Plaintiff took bill of exceptions No. 3.

The same witness was again asked: "If in answer to the fourth interrogatory you say you have seen, etc., please state if you ever saw this book in the hands of any officer in the employ of defendant in the year 1884. If so, what officer was it, and if he said anything about it as to where it came from, please state what he said."

The answer was: "I saw such list in the hands of Henry Funnell, who was the assistant superintendent of the International & Great Northern railroad, at Houston, Texas. Said Funnell told me that said list was sent to him by Joseph Herrin, superintendent of the International & Great Northern railroad, from Palestine, Texas, and also that he got orders from Mr. Herrin to discharge Mr. Behee because Behee was on the black list," etc.

The court sustained the defendant's objection on the ground that the list was the best evidence, and a part of the answer was hearsay. Plaintiff offered to read all the answer except the hearsay. Exception reserved to the ruling by bill No. 4.

*D. W. Humphreys,* for appellant, cited Belo v. Wren, 63 Texas, 686; Railway v. Quigley, 21 How., 202; Bouvier Law Dic., 92; Odgers on Libel and Slander, 198, 274; Towns on Libel and Slander, 378, 379; 1 Greenl. on Ev., 560, 600–604.

*Davis, Beall & Rogers,* for appellee.

COLLARD, JUDGE. Malice is a necessary ingredient of libel. When a defamatory and false publication is made by one person of another malice will be imputed to the act; but where the publication is privileged and is believed to be true the prima facie case of libel so made is deemed to have been fully met; and then to sustain the action malice must be shown to exist by other evidence as by the style or manner of the writing or by extraneous facts. These principles were clearly announced by Associate Justice Roberts in the well considered case of Holt v. Parsons (23 Texas, 21). They were then and are now amply supported by the best authority. "Malice or

want of good faith is established by showing that the matter published was false within the knowledge of the publisher, or it may be established by showing bad motive in making the publication, as that it was made more publicly than was necessary to protect the interest of the parties concerned, or that it contained matter not relevant to the occasion, or that the publisher entertained ill will towards the person whom the publication concerned." (Townshend on Slander and Libel, 462.)

Such questions of malice should be left to the jury. If a privileged communication, though false, is believed to be true by the publisher, and the language used to express the communication is not unnecessarily disparaging, and it is not shown by extraneous evidence to have been actuated by a malicious intent to injure, there can be no recovery; but if one, whose duty or privilege it is to give information concerning the character of another, defames his character or states facts not actionable *per se,* but which become actionable from the injurious consequences resulting therefrom, knowing the same to be false, the bad intent or motive necessary to sustain the action may be inferred. A master does not have the right to libel his servant simply because the relation of master and servant exists, or had existed, by making false and injurious publications concerning his character. The jury may infer bad motive from the fact that the publication was false and injurious.

The court in this case, in its charge, after defining express malice to be "a bad, wicked or evil intent," instructed the jury that such malice "could not be presumed, but must be proved like any other fact." We think the latter part of the charge was erroneous. The jury may have concluded that the bad motive could only be established by direct evidence. Malice is rarely ever shown by direct evidence; it is commonly a state of mind indicated and inferable from other facts proved—from language used or acts, or both together. We infer a bad motive when an injurious act is intentionally done without legal excuse. The motive is not a bare fact of itself, susceptible of proof like any other fact; it is a conclusion deduced from acts and words. To inform a jury that such a conclusion could not be presumed would give them to understand that it could not be inferred. It would not be presumed as a matter of law, but a jury would not be expected to understand such a distinction unless it was explained to them. If the alleged libel in this case

was not actionable in itself, but was made so by special damage resulting from its *improper* publication, and defendant knew it to be false, malice might be presumed or inferred by the jury. We do not think it would be correct to call the attention of the jury to any fact from which they might infer malice, but they should have been informed that it could be inferred from facts and circumstances. (Townshend on Slander and Libel, 348–351; Odgers on Libel and Slander, 265–267; Townshend on Slander and Libel, pp. 129–133, secs. 87–89; Willis & Brother v. McNeil, 57 Texas, 465; Stansell & Younger v. Cleveland, 64 Texas, 660.) The foregoing views will dispose of all the errors complained of on account of the charge of the court and of refused charges. The list inquired about, in the interrogatories propounded to the witness Fred Richmond, is shown by bill of exceptions number four to have been in the possession of Funnell, assistant superintendent of the International & Great Northern Railway, one of the lines at that time operated by defendant, and Funnell swears he had in his possession one or more of such lists, and that he returned them to Joseph Herrin, superintendent, by his order. It is thus traced into the possession of defendant. Richmond says he has not possession of the list or control of it. Plaintiff gave notice to defendant to produce it on the trial. These being the facts, on the failure of defendant to produce the list, plaintiff was entitled to prove the contents of it by secondary evidence. It seems the four bills of exception refer to the same list. If they do, and Funnell as assistant superintendent had it in his possession, plaintiff could prove its contents by parol. The evidence was admissible to show the *animus* of the defendant. It was not the libel as alleged, and it was published after the time definitely complained of; but under the allegations of the petition plaintiff could offer proof of a republication, or a continuous publication of the alleged libel, or of other words written or spoken by defendant, before or after the commencement of the action, going to show malice. (Odgers on Libel and Slander, 270, 271.) It was error to exclude the evidence. What Funnell said about it was not evidence.

It is our opinion the judgment ought to be reversed and the case remanded for a new trial.

*Reversed and remanded.*

Opinion adopted October 16, 1888.

Stayton,
*Chief Justice.*