## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. PICKEL. (No. 2831.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 28, 1923. Rehearing Denied Jan. 24, 1924.)

**1. Libel and slander ⬄45(2)—Letter from railroad superintendent to vice president, regarding discharged employee, held privileged.**

A letter written by a railroad superintendent to the vice president and general manager, in answer to one asking for the facts in regard to discharge of a section foreman, was qualifiedly privileged.

**2. Libel and slander ⬄51(1)—Actual "malice" must be shown where communication was privileged.**

To hold one liable for even untrue and damaging statements in a privileged communication, actual "malice" must be shown.

**3. Libel and slander ⬄112(2)—Finding that letter from railroad superintendent to vice president regarding discharged employee was malicious held unsupported by the evidence.**

Evidence that a railroad superintendent wrote in answer to vice president's inquiry regarding discharge of plaintiff employee, stating only relevant information based on records and inquiry, that only the two officials and a stenographer knew the contents, until workmen removing papers from the office gave the letter to plaintiff, that plaintiff had no previous personal dealings with the writer, made no protest nor reply to the letter but turned the matter over to an employees' grievance committee, did not support a finding of malice, in view of other letters justifying the writer's statements.

Appeal from District Court, Franklin County; R. T. Wilkinson, Judge.

Suit by J. H. Pickel against the St. Louis Southwestern Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

King, Mahaffey & Wheeler, of Texarkana, and Ward & Burford, of Mt. Pleasant, for appellant.

Wilkinson & Cook, of Mt. Pleasant, and B. Q. Evans, of Greenville, for appellee.

HODGES, J. In this suit the appellee sought and recovered a judgment for damages for libel. The action is based upon a letter written by E. A. Triplett, appellant's superintendent, to W. A. Webb, its vice president and general manager. Pickel, the plaintiff below, had previous to this correspondence been employed by the appellant as a section foreman. In July, 1920, he secured a leave of absence for the purpose of visiting in Tennessee, and on his return found his place filled by another man. His request for reinstatement was refused by his immediate superior. He finally wrote a letter to the president of the appellant company, which was referred to the general manager, W. A. Webb. Upon receipt of that letter Webb wrote the following to Triplett:

"Tyler, Texas, January 3, 1921.

"Mr. E. A. Triplett, Superintendent, Mt. Pleasant, Texas—Dear Sir: Attached is a letter to President Herbert by former section foreman J. H. Pickel, dated December 26, 1920,

in regard to not being put back to work after his return from leave of absence. Please let me have the facts in the case promptly, with the return of the attachments.

"Yours truly,    W. A. Webb."

In reply to Webb's letter, Triplett wrote the following:

"At Texarkana—January 5, 1921. PR—J. H. Pickle, Former Section 4man, Section 109½, Mount Pleasant, Tex. Mr. W. A. Webb, V. P. & General Manager, Tyler, Texas. Dear Sir;— Yours File '267–D. of January 3d, regarding former section foreman J. H. Pickle; and, with a return of letter written to President Herbert, beg to advise that Mr. Pickle is an agitator and member in good standing of all the track organizations and has been riding up and down the road telling the other foremen to watch him get reinstated with full pay for all time lost. He turned his case over to the local grievers last September, who have been attempting to handle since that date. Mr. Pickle has not been in continuous employment with this Company since July 23rd, 1906; but has been in and out eight or ten times. It has been his practice to resign to keep from getting fired, change of roadmasters putting him back. It have developed that his services have never been satisfactory. The facts as to his last retirement are as follows: I repeatedly called Roadmaster's attention to Section 109½ and one or two other sections without getting any results. After asking Roadmaster to make a change and satisfying myself that the Roadmaster was tied up so that he could not make a change, I relieved the Roadmaster on July 25th, placing new roadmaster, Mr. B. E. Wilbur, in charge. Amongst other things, I instructed Roadmaster Wilbur to make a change on Section 109½. Just prior to Mr. Wilbur's taking charge, Pickle made verbal arrangements with former roadmaster for leave of absence and he had tentative verbal understanding that he would be granted leave of absence, providing conditions would permit. About this time, account sickness of foreman in Mt. Pleasant Yard, emergency man was placed on Section 109½ and Mr. Pickle was placed in the Yard. Mr. Wilbur took charge of the Division on July 25th. On August First, the yard foreman returned to work. Pickle, instead of reporting back on his section or discussing matter with his roadmaster, walked off the job and did not return until August 29th. He left the Division at a critical time and without permission from his immediate superior. When he returned in September, he was told that he was not needed, as conditions on Section 109½ did not warrant his reemployment. Pickle is not a track man and his services as a section foreman has been anything but satisfactory. In leaving his Division without permission of his Roadmaster, he was guilty of desertion, for which no possible excuse can be offered.

"Yours truly,    Superintendent."

This is the letter which the plaintiff claims is libelous, and which forms the basis of this suit. He alleges that by reason of its publication he was prevented from securing employment in the service of any railway company. He also claims that the letter caused him great humiliation and mental anguish.

The only publication of the letter disclosed in the evidence was that made by Triplett in mailing it to Webb. Triplett testified that he retained a carbon copy, and this copy was later stolen from his office. Pickel testified that the first he knew of the letter was when his attention was called to the carbon copy by some railway employees engaged in moving papers from one railway office to another in Mt. Pleasant. While being moved, a bundle of papers fell from the truck, was broken open, and this carbon copy was discovered by the workmen. Pickel happened to be passing at the time, and his attention was called to this copy, which was then given to him.

The court submitted the following special issues:

"(1) Was the letter maliciously written by Triplett?

"(2) Did the preponderance of the evidence show that the plaintiff was damaged by the writing of the letter?"

Both of these questions were answered in the affirmative. The third question required the jury to find the amount of actual damages sustained by Pickel, which they fixed at $6,500.

[1, 2] There are numerous assignments of error presented in the appellant's brief; but, in view of the disposition made of the case, we need discuss only those which assail the sufficiency of the evidence to sustain the finding that the letter was maliciously written. That the circumstances under which this letter was written bring it within the class known as qualifiedly privileged communications is too clear for argument. The writer had been called upon by his superior in the service for information concerning the record of an applicant for re-employment. It was the duty of the writer to state candidly and fully all the facts within his knowledge that would enable his superior to judge fairly of the fitness of the applicant. The employment sought was in a branch of service which concerned not only the railway company and the applicant for employment, but the public and other railway employees as well. Upon the fidelity and efficiency of the trackman depends the safety of all those who operate and travel upon railway trains. To unduly restrict the freedom of railway officials in discussing among themselves the qualifications of applicants for employment in so important a branch of the service would tend to discourage and hinder the exercise of proper diligence in selecting competent employees. It

is true that such occasions should not be used as opportunities to malign the character of those seeking employment; but, until this is shown to be the purpose of the unfavorable criticism uttered at such times, the railway company should not be penalized in damages for the injuries which an applicant may sustain. It is now the settled law that to hold one liable for even untrue and damaging statements made in a privileged communication it must be shown that the writer was inspired by actual malice. I. & G. N. Ry. Co. v. Edmundson (Tex. Com. App.) 222 S. W. 181, 17 R. C. L. 341. The above citations contain numerous other authorities bearing upon this subject. The question then is, Does the evidence show that Triplett was inspired by malice in writing the letter to Webb? In his work on Slander and Libel, p. 462, Mr. Townsend says:

"Malice or want of good faith is established by showing that the matter published was false within the knowledge of publisher; or it may be established by showing bad motive in making the publication, as that it was made more publicly than was necessary to protect the interest of the parties concerned, or that it contained matter not relevant to the occasion, or that the publisher entertained ill will towards the person whom the publication concerned."

[3] There was no direct evidence offered upon the trial that Triplett had any personal ill will towards Pickel. He testified that he did not know Pickel when he saw him. Pickel testified that he knew Triplett, but that no previous personal dealings had occurred between them. There is nothing in the record to indicate that Triplett had any motive other than the welfare of the railway service in objecting to the employment of Pickel. The publication did not contain anything irrelevant to the subject inquired about. It was no more than what might be termed a full answer to the inquiry made by Webb. Nor was there any undue publicity given to the contents of the letter. The testimony does not show that any one except Triplett, his stenographer, and Webb knew that the letter was written, or what it contained, until a carbon copy was discovered by workmen removing the papers from one office to another. The evidence does not justify the conclusion that Triplett knew that any of the statements contained in the communication were false. According to his testimony, he based his criticism of Pickel upon the written records contained in his office, and also upon the information which he had gathered from other employees in the service. It appears that before applying to higher officials Pickel had written Triplett a letter asking for reinstatement, and in reply to that letter Triplett wrote to Pickel as follows:

"Mr. J. H. Pickel, Ex-foreman, Section 109½, Mt. Pleasant, Texas—Dear Sir: Your letter of October 5th, requesting reinstatement as foreman on section 109½: For your information beg to advise that the conditions on this section have never been satisfactory to me. Also wish to advise that I personally instructed that change in foreman be made three or four times, as I considered the section in dangerous condition. I finally made change in roadmasters as I could not get condition corrected to my satisfaction. When the new roadmaster took charge I instructed him to make the necessary change on this station. I find that you were not granted any leave of absence. You had a tentative understanding with former roadmaster that if nothing prevented you would be given a leave of absence. When the new roadmaster, Mr. Wilbur, took charge on July 25th, you were temporarily relief foreman in the Mt. Pleasant yard. You were thoroughly conversant with the fact that a new roadmaster had been appointed. You were also thoroughly conversant with the fact that you were now working under Roadmaster Wilbur, and subject to his instruction. You were also conversant with the fact that you had no written authority to leave your section in charge of a substitute, for a day longer than was necessary. You were also conversant with the fact that it was proper and customary for you to confer with the new roadmaster before carrying out any verbal understanding as to leave of absence that you had had with former roadmaster. Regardless of this, of your own free will and without advising Mr. Wilbur, you absented yourself from the division from August 1st to August 29th. There is no merit to your claim and your leaving at the time you did merely prevented your discharge for failure to maintain section 109½. We are not placing you back in the service for the reason that conditions on section 109½ do not warrant your reemployment.

"Yours truly,        Superintendent."

Pickel did not reply to that letter, nor did he protest to Triplett that he had been unjustly accused. According to his testimony, upon the receipt of Triplett's letter he turned the matter over to the grievance committee of his organization. The record also contains letters written by other officials who were familiar with Pickel's services, that justified the conclusions reached by Triplett concerning Pickel's efficiency as a section foreman.

The facts here are similar to those in the Edmundson Case, above referred to. There the discharged employee testified that the charges against him were false; that he went to the author of the defamatory letter which caused his discharge, and protested against the false accusation, and several times asked for an investigation; that further investigation was arbitrarily refused, in a manner which indicated a shade of ill feeling. The circumstances relied on in that case to show ill will on the part of the writer of the offensive communication are much

stronger than in this case. We therefore conclude that the testimony was insufficient to support the finding of the jury that Triplett was inspired by malice in writing the communication to Webb.

There appears to be nothing in the evidence tending to show that a stronger case might be made in another trial. The Edmundson Case and the numerous authorities therein cited we think justify us in reversing the judgment of the trial court and in here rendering judgment for the appellant.