**DENTON PUBLISHING COMPANY,**
Petitioner,

v.

**D. B. BOYD, Respondent.**

No. B–1937.

Supreme Court of Texas.

Dec. 2, 1970.

Rehearing Denied Jan. 6, 1971.

Minor & Knight, Robert Weldon Knight, Denton, Brown, Herman, Scott, Young & Dean, A. M. Herman and J. Shelby Sharpe, Fort Worth, for petitioner.

Coleman, Whitten & Philips, Michael J. Whitten and William P. Phillips, Jr., Denton, for respondent.

GREENHILL, Justice.

Our former opinion of July 29, 1970, in this cause is withdrawn, our judgment of that date is withdrawn, and the following opinion is substituted therefor:

Plaintiff D. B. Boyd sued the Denton Publishing Company alleging he was libeled in a newspaper report of a Denton City Council meeting published by defendant in the Denton Record-Chronicle the day following the council meeting. The trial court held the statement was libelous as a matter of law, instructed the jury that the plaintiff was entitled to at least some damages, and submitted only an issue on the amount of the damages. The jury answered in the amount of $10,000.

The Court of Civil Appeals affirmed, 448 S.W.2d 145, rejecting the newspaper's contentions that the article was privileged under Sections 2 and 3 of Article 5432 [1] as a fair, true and impartial report of a regular public meeting of the Denton City Council. That court also held that the trial court did not err in holding as a matter of law that the statement was libelous per se, was not privileged, and in instructing the jury to find at least nominal damages for the plaintiff.

In our original opinion we reversed the judgments below and rendered for the defendant publishing company, holding that the newspaper account, when considered in the context of the complete item, was a fair, substantially true and impartial report of the proceedings of the City Council meeting, and as such, was privileged in the absence of proof of actual malice.

However, on rehearing, the Court is of the view that the article in question is not privileged as a matter of law, because there are issues of fact as to what was said at the meeting and how the statement would have been interpreted by the ordinary reader. It is the burden of the defendant to prove its affirmative defense of privilege in this case, and to obtain favorable jury findings in support of its defense. There were no correct jury issues submitted or requested by the defendant upon which its defense of statutory privilege can be based, and its failure to get such findings is a waiver of the defense of privilege. The authorities for this holding will be discussed later herein. We, therefore, affirm the judgments of the courts below.

The defendant newspaper's reporter attended a regular meeting of the Denton City Council and published a page-one story on October 11, 1967, reporting numerous

---

1. Statutory references herein are to Vernon's Texas Civil Statutes annotated.

items which had been discussed and acted upon at the council meeting. So that it may be read in context, a major portion of the news story is reproduced in the appendix to this opinion. In the twelfth paragraph, the following alleged libelous statement appeared:

"A group of citizens from the Sequoia Park subdivision, represented by Eugene Wright, asked the council if the streets in the subdivision could be paved. *The developer of the area, D. B. Boyd, declared bankruptcy and didn't pave a total of 901 running feet of streets in the area.* [Emphasis added.]

"The group maintains that the city was negligent in allowing Boyd to build houses in the area when all of the streets weren't built first—a requirement of the city's subdivision rules.

"Wright agreed to meet with Reynolds [the City Manager] in an effort to work out a solution to the problem."

The following day the defendant was served with citation in this action, and the newspaper printed a retraction that same afternoon.

It was conceded in oral argument that the plaintiff was not a public figure, and we do not consider this cause as coming within the area of fair comment and criticism.

It is not disputed that the printed statement that plaintiff had declared bankruptcy was false, as no bankruptcy proceedings had been filed. In the absence of a privilege, a false statement that a merchant is bankrupt has been held to be libelous *per se*. Dun and Bradstreet, Inc. v. O'Neil, 456 S.W.2d 896 (Tex.Sup.1970); Hirschfield v. Ft. Worth National Bank, 83 Tex. 452, 18 S.W. 743 (1892). Therefore, the Court has determined that the language used in the Denton Record-Chronicle is damaging to the plaintiff.

The case was pleaded, tried, and appealed by the newspaper on the theory that it is a report of the proceedings of the City Council meeting and, as such, is privileged under Article 5432, Sections 2 and 3, set out below:

"The publication of the following matters by any newspaper * * * shall be deemed privileged and shall not be made the basis of any action for libel.

"2. A fair, true and impartial account of * * * all reports of and proceedings before * * * city councils * * * and of any debate or statement in or before such body.

"3. A fair, true and impartial account of the proceedings of public meetings, dealing with public purposes, including a fair, true and impartial account of statements and discussions in such meetings, and of other matters of public concern, transpiring and uttered at such public meetings."

■ The news story obviously constituted, at least in part, an account of a public meeting. However, the above italicized portion of the news item stating that Boyd had declared bankruptcy does not show on its face that it was, or was not, a report of a statement or utterance at such meeting. The problem arises because the article as published is subject to the interpretation that, as a matter of background information, Boyd was in fact bankrupt instead of reporting that it was *stated* at the City Council meeting that he was bankrupt. The publication would be within the privilege provided by statute as long as it purported to be, and was, only a fair, true and impartial report of what was stated at the meeting, regardless of whether the facts under discussion at such meeting were in fact true, unless the report was made with malice. Behee v. Missouri Pac. Ry. Co., 71 Tex. 424, 9 S.W. 449 (1888); Snider v. Leatherwood, 49 S.W.2d 1107 (Tex.Civ. App.1932, writ dismissed); St. Louis Southwestern Ry. Co. of Texas v. Pickel, 256 S. W. 273 (Tex.Civ.App.1924, no writ); Restatement of Torts § 611 (1938).

The requirement of Article 5432 that the publication must be a "fair, true and impartial account of the proceedings" makes this a qualified privilege, and not an absolute privilege. A report which is not fair, true and impartial, or which is actuated by malice, does not enjoy this privilege. Kruegel v. Cockrell & Gray, 151 S.W. 352 (Tex.Civ.App.1912, writ refused); Walker v. Globe-News Publishing Co., 395 S.W.2d 686 (Tex.Civ.App.1965, writ refused n. r. e.); Root v. Republic National Bank of Dallas, 337 S.W.2d 709 (Tex.Civ.App.1960, no writ).

■ Privilege is an affirmative defense in the nature of confession and avoidance; and, except where the plaintiff's petition shows on its face that the alleged libelous publication is protected by a privilege, the defendant has the burden of proving that the publication is privileged. A. H. Belo & Co. v. Looney, 112 Tex. 160, 246 S.W. 777 (1922); Dealers National Insurance Co. v. Rose, 396 S.W.2d 535 (Tex.Civ.App. 1965, no writ); Mulcahy v. Cohen, 377 S. W.2d 100 (Tex.Civ.App.1964, writ refused n. r. e.); Express Publishing Co. v. Gonzalez, 326 S.W.2d 544 (Tex.Civ.App.1959, writ dismissed); Annotation, 51 A.L.R.2d 552 (1957).

■ As stated in Dun and Bradstreet v. O'Neil, supra, once the conditional privilege is shown by the defendant to exist, the burden is then on the plaintiff to show that the privilege is lost. In the present case, however, the defendant has failed to prove that the privilege exists; and, therefore the plaintiff was not required to prove that the privilege was abused or that the defendant acted with malice. There is no evidence of malice in this case.

■ Where the facts are undisputed and the language used in the publication is not ambiguous, the question of privilege is ordinarily one of law for the court. Christy v. Stauffer Publications, Inc., 437 S.W.2d 814 (Tex.Sup.1969); Fitzjarrald v. Pan-handle Publishing Co., 149 Tex. 87, 228 S.W.2d 499 (1950); Cotulla v. Kerr, 74 Tex. 89, 11 S.W. 1058 (1889).

In *Fitzjarrald,* supra, 228 S.W.2d at 505, we said:

" * * * Whether a publication is privileged or not is generally a question of law for the court to determine. If the language used is not ambiguous, or where the facts and circumstances surrounding the publication are undisputed, it is for the court to decide whether or not it was privileged."

■ It is for the jury, however, to resolve any dispute in the evidence as to the circumstances under which the publication was made. First State Bank of Lyford v. Parker, 28 S.W.2d 269 (Tex.Civ.App.1930, writ dismissed). If the language used in the publication is ambiguous, the jury must determine how it would have been interpreted by the ordinary reader. Caylor v. Nunn, 235 S.W. 264 (Tex.Civ.App.1921, no writ); Van Arsdale v. Time, Inc., 35 N.Y.S.2d 951 (Sup.Ct.1942); Annotation, 155 A.L.R. 1346, 1350; 50 Am.Jur.2d, Libel and Slander, § 200. See also Guisti v. Galveston Tribune, 105 Tex. 497, 105 S.W. 874 (1912). If the facts upon which the privilege is conditioned by statute are in dispute, the facts are to be determined by the jury. The application of the law of privilege to those facts is for the court. Annotation, 26 A.L. R. 830 (1923).

Considering the entire record, we are of the view that a fact issue was raised by the pleadings and evidence as to what was said at the meeting in question. A careful reading of the record shows that there was some testimony that the name of D. B. Boyd, the plaintiff, was *never* used in open discussion. The newspaper reporter conceded that, "No one ever mentioned Mr. Boyd's name. They always said 'developer' bankrupt." He later testified that, "I sat next to the City Attorney. After this thing had been discussed for a while, I didn't

know—I needed to find out something about the thing because I didn't know where it was, and I didn't know who the developer was, or why the streets hadn't been paved, and I was sitting next to the City Attorney, and I asked him." On further examination by the plaintiff's attorney, the reporter testified that he was asking for background information and considered the City Attorney a reliable news source. It is not conclusively shown that other persons attending the meeting heard this same information. Some witnesses, however, stated without qualification that they heard statements to the effect that "the developer had gone bankrupt," and that "D. B. Boyd had gone bankrupt." The City Attorney testified that during the meeting he replied in the affirmative to an inquiry by Councilman Loveless as to whether or not D. B. Boyd had been bankrupt. On the other hand Councilman Loveless testified that he asked the question but did not ever receive a direct answer. If anyone stated during the meeting that the developer of Sequoia Park was bankrupt, he (Loveless) did not hear it.

In addition to the issue on what was said at the meeting, there must be a finding as to how the statement in the article would have been interpreted by the ordinary reader. Since the libelous portion of the publication is subject to the reasonable interpretation that it is a background statement by the newspaper instead of a report of something which was said at the meeting, it is for the jury to determine whether the average reader of the newspaper would interpret it as a report of something said at the meeting. The libelous sentence must be considered in the context of the entire article.

If it had been found by the jury that the reported statement was made at the meeting, and that the sentence in question would have been interpreted by the average reader as something which was said at the meeting, the statement in the article would constitute a fair, true and impartial report of such proceedings, and would therefore be privileged.

As above indicated, in an action for libel, privilege is an affirmative defense. Where the defense of privilege depends upon determination of facts, as is true in this case, the burden is upon the newspaper to obtain the necessary findings of fact to support the privilege. Petitioner here, the newspaper, requested the submission of an issue inquiring whether "the article in the Denton Record-Chronicle dated October 11, 1967, introduced as Plaintiff's Exhibit 1, was a privileged publication." Accompanying the requested issue was a requested instruction that in order for the publication to be privileged, "it must have been a report of a meeting of a City Council or other governing body of a city or town." This was not a fair submission, and the trial court properly refused to submit the requested issue and instruction. The jury could easily have concluded that the "article" was a report of a meeting of the city council without ever considering whether the statement in question was a true account of something said at the meeting and would have been so understood by the ordinary reader.

Petitioner did not submit or request any issue for submission to the jury on the fact issues above outlined, and no such issues were given. Rule 279, Texas Rules of Civil Procedure, states that, "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived; * * *" Under Rule 279, therefore, the defense of privilege, under the circumstances of this case, was waived. And, since the courts below reached a legally correct result, and there is no error in their judgments, we may not reverse those judgments and remand the case for a new trial. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 at 385 (Tex.Sup.1963); Davis v. Davis, 141 Tex. 613, 175 S.W.2d 226 (1943).

The judgments of the trial court and the Court of Civil Appeals are affirmed.

## A P P E N D I X
## *INTERFERENCE DENIED*

# Reich Accusation Lacking Support

**By MIKE MOON**
**Staff Writer**

Three city department heads Tuesday night denied charges that they had been "interfered with" by two city councilmen.

George Reich, former superintendent of electrical utilities, submitted a letter to City Manager Jack Reynolds upon his resignaiton charging Councilmen J .T. Jones Jr. and Marvin Loveless with the interference, a violation of the city charter.

Jones said he asked Leonard Ehrler, director of parks and recreation, Bob Pearce, city engineer, and Jack Owen, public works superintendent, to appear before the council in reference to the charges.

"For some few months now, we (the three new councilmen) have been subjected to quite a bit of criticism from several sources," Jones said. "We have been accused of meeting privately and making up our minds before our meetings, of not having much intestinal fortitude, and then a former employe has accused Marvin Loveless and myself of interfering with four department heads." The fourth department head was Reich.

Jones questioned the three department heads present at the meeting asking them if either of the charged councilmen had ever been in their offices, requested or interfered in a n y way with their jobs.

Ehrler, Owen and Pearce all stated that they had not been interfered with by the two councilmen.

In other action, the council voted to discontinue the use of parking meters in downtown Denton on a six - month trial basis, as requested by the Chamber of Commerce.

Richard Taliaferro of the chamber requested the action and will work with the city manager on the details on the program.

John Roady presented several documents in his case to get the city to pay him for the construction of a bridge which is not on his subdivision property. The council majority had earlier voted to reimburse J. Newton Rayzor for a bridge built under similar circumstances.

The council voted Tuesday night to have Reynolds meet with Roady to determine any degree of "moral obligation" owed by the city to Roady. Roady is asking for $5,908.50 for the bridge construction and $620 in accrued interest on that money.

City Attorney Jack Barton submitted an opinion stating that the city would be legally obligated no more than $500.

A group of citizens from the Sequoia Park subdivision, represented by Eugene Wright, asked the council if the streets in the subdivision could be paved. The developer of the area, D. B. Boyd, declared bankruptcy and didn't pave a total of 901 running feet of streets in the area.

The group maintains that the city was negligent in allowing Boyd to build houses in the area when all of the streets weren't built first — a requirement of the city's subdivision rules.

Wright agreed to meet with Reynolds in an effort to work out a solution to the problem.

Edell Price, 1116 E. Hickory St., asked the council where money would come from for the reopening of Oakland Avenue. He said he had been told that if Oakland is opened, no more money would be spent on streets in Southeast Denton.

Mayor Zeke Martin said that if Oakland is reopened, 1964 bond money will be used on the project.

The council overruled the Planning and Zoning Commission on one zoning appeal and failed by one vote to overrule another decision even though the majority was in favor.

The petition of C. C. Smith requesting the change of zoning of a lot in north Denton from residential to small apartments was denied even though three councilmen voted in favor of the zoning change.

Barton pointed out that it
See COUNCIL, Page 2

[A3212]

[The balance of the article
is immaterial here.]

HAMILTON, Justice (dissenting).

I respectfully dissent.

In my opinion the article published in the Denton Record Chronicle, October 11, 1967, would convey to the public the impression that it was a report of the proceedings at the Denton City Council meeting on the evening of October 10, just as much so had the article been headed "A Report," or "An Account of Proceedings" at said meeting. There is nothing in the article to indicate or suggest that the alleged libelous statement was not part of the report or account of what happened at the meeting. I would say that there is no issue of fact raised as to how the statement would have been interpreted by the ordinary reader.

I likewise disagree with the majority in its holding that an issue of fact was raised as to what was said at the meeting concerning the developer being bankrupt. As said in the majority opinion, some of the witnesses testified without qualification that they heard statements to the effect that the developer had gone bankrupt, and that D. B. Boyd had gone bankrupt. There was one witness who testified that if anyone stated during the meeting that the developer of Sequoia Park was bankrupt he did not hear it. This is not evidence that the statement was not made that the developer was bankrupt and does not raise a fact issue on that question. The reporter himself testified that "No one ever mentioned Mr. Boyd's name, they always said the 'developer' bankrupt." If everything quoted in the alleged libelous statement was said at the meeting except the name of the developer, and if it is undisputed that the name of the developer of the Sequoia Parks Subdivision is D. B. Boyd, it is difficult to see how that true statement could turn an otherwise privileged statement into one not privileged.

I agree with the original opinion of this Court holding that the alleged libelous statement was privileged under Sections 2 and 3 of Art. 5432 Vernon's Texas Civil Statutes, and would reverse the judgments below and render judgment for petitioner.