**Affirmed and Memorandum Opinion filed August 19, 2014.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-12-00034-CV

**HELEN MAYFIELD, Appellant**

**V.**

**THE EAGLE NEWSPAPER, HOLLY HUFFMAN, MATTHEW WATKINS, AND JOHN P. BARNWELL, CEO OF THE EVENING POST PUBLISHING CO., Appellees**

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2011-26254**

## M E M O R A N D U M   O P I N I O N

Appellant, Helen Mayfield, sued appellees, an entity she named as "The Eagle Newspaper,"[1] Holly Huffman, Matthew Watkins, and John P. Barnwell, Chief Executive Officer (CEO) of the Evening Post Publishing Co., for libel, intentional infliction of emotional distress, and business disparagement based on

---

[1] Although Mayfield named "The Eagle Newspaper," appellees assert the correct name is "Bryan-College Station Eagle." We will refer to it as "The Eagle."

allegedly defamatory articles about Mayfield published in The Eagle. Mayfield appeals (1) a summary judgment in favor of appellees on all of Mayfield's claims, and (2) an order denying Mayfield's post-judgment motion for sanctions. We affirm.

## I. BACKGROUND

Mayfield, a disbarred attorney, appears pro se in the present appeal. In August 2007, she was arrested for multiple counts of felony forgery. In July 2008, a Brazos County jury convicted Mayfield, and she was sentenced to two years' confinement in state jail. The Waco court of appeals affirmed the conviction, and the Texas Court of Criminal Appeals refused Mayfield's petition for review. *See Mayfield v. State*, Nos. 10-08-00292, 293, 294, 295-CR, 2010 WL 2953199 (Tex. App.—Waco July 28, 2010, pet. ref'd) (mem op., not designated for publication).

At relevant times, appellees Huffman and Watkins were journalists for The Eagle. Huffman wrote an article about the charges against Mayfield and her arrest, which was published in The Eagle on August 12, 2007. According to Huffman, she obtained all of her information regarding Mayfield from "Probable Cause Statement[s]" which were executed by College Station police officers and publicly available in the Brazos County district clerk's office. Watkins wrote several articles about Mayfield's trial and conviction, which were published in The Eagle during July 2008. All of the above-cited articles were published on the Internet version of The Eagle on the same day they were published in the newsprint version.

In April 2011, Mayfield sued appellees for libel, alleging the articles were defamatory. In addition to asserting claims against The Eagle, Huffman, and Watkins, Mayfield sued Barnwell, alleging he, or the company for which he is Chief Executive Officer, owned The Eagle. Appellees filed a motion for

2

traditional summary judgment on several grounds and set a hearing for December 12, 2011. Three days before the hearing, Mayfield filed two separate documents that she referred to as her summary judgment response and counter motion for summary judgment. On the same day, she filed an amended petition, adding claims for intentional infliction of emotional distress and business disparagement.

On December 12, 2011, the trial court signed an order granting the appellees' motion for summary judgment and ordering that Mayfield take nothing on all of her claims. While the trial court retained plenary power, Mayfield filed a "Motion for Sanctions" alleging, inter alia, appellees failed to serve her with a complete copy of the motion for summary judgment or any notice of the hearing on that motion. Appellees filed a response to the motion for sanctions. On February 6, 2012, after a hearing, the trial court signed an order denying the motion for sanctions.

## II. ANALYSIS

Mayfield's appellate brief is deficient in that many of her assertions are unclear, difficult to understand, and unsupported by record references, argument, or authorities, as required by the appellate briefing rules. *See* Tex. R. App. P. 38.1(g), (i).[2] However, liberally construing the brief, we glean that Mayfield's issues pertinent to this appeal (numbered differently at various points throughout her brief) fall into three categories: (1) her complaint regarding service of the motion for summary judgment and notice of hearing; (2) substantive challenges to

---

[2] Additionally, Mayfield includes matters irrelevant to challenging the trial court's orders at issue. She essentially attacks her conviction and the actions of authorities relative to the criminal prosecution. Further, she claims the trial court and appellees altered items in the clerk's record and appellees or their counsel burglarized Mayfield's home to steal her legal files.

the summary judgment;[3] and (3) an assertion that the district clerk did not file a complete record in our court.

## A. Service of Motion for Summary Judgment and Notice of Hearing

Mayfield contends the trial court erred by granting summary judgment and denying Mayfield's motion for sanctions because appellees did not serve her with a complete copy of the motion for summary judgment and notice of hearing. Mayfield raised these complaints for the first time in her post-judgment "Motion for Sanctions," which, for purposes of this appeal, we will construe as a motion for both a new trial and sanctions.[4]

### *Standard of Review and Applicable Law*

When service is by mail, a motion for summary judgment and notice of hearing shall be filed and served on the non-movant at least twenty-four days before the time specified for hearing. *See* Tex. R. Civ. P. 166a(c), 21(a); *Lewis v. Blake*, 876 S.W.2d 314, 315–16 (Tex. 1994). We apply the abuse-of-discretion

---

[3] Mayfield also suggests the trial court erred by denying Mayfield's counter motion for summary judgment. However, she waived that contention by failing to obtain a ruling on the counter motion, which was filed only three days before the trial court heard and granted appellees' motion. *See* Tex. R. App. P. 33.1(a)(2)(A).

[4] In the motion, Mayfield requested only sanctions based on these complaints and did not expressly request the trial court to set aside the summary judgment. *See Babajide v. Citibank (South Dakota), N.A.*, No. 14–04–00064–CV, 2004 WL 2933575, at *1 (Tex. App.—Houston [14th Dist.] Dec. 21, 2004, no pet.) (mem. op.) (recognizing non-movant seeking to set aside summary judgment on ground she received no notice of hearing must preserve error in a post-judgment motion). Relative to a different complaint raised in the motion for sanctions, Mayfield requested that appellees be precluded from supporting their defenses with certain evidence, which arguably was an implicit request for a new trial. Then, at the hearing on the motion, Mayfield represented she was not seeking a new trial, at least on her complaints regarding lack of service, although appellees acknowledged a "generous" reading of her motion might glean such a request. Even if we construe the motion as implicitly requesting a new trial based on these complaints (despite her subsequent representation), the trial court did not abuse its discretion by denying that request for the same reason it did not abuse its discretion by denying sanctions.

4

standard when reviewing a trial court's denial of a motion for new trial alleging the non-movant was not served with a motion for summary judgment or notice of hearing. *See Dowell v. Theken Spine, LLC*, No. 14–07–00887–CV, 2009 WL 1677844, at *3–4 (Tex. App.—Houston [14th Dist.] June 2, 2009, no pet.) (mem op.).

Additionally, if a party fails to serve on or deliver to the other party a copy of a motion, in accordance with the rules for service, the trial court may, in its discretion, after notice and hearing, impose an appropriate sanction. *See* Tex. R. Civ. P. 21b. Accordingly, we review a trial court's denial of sanctions under Rule 21b for abuse of discretion. *See id.*; *Spellmon v. Collins*, 970 S.W.2d 578, 580–81 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009). In an abuse-of-discretion review, the trial court, as fact finder, is sole judge of the credibility of the witnesses and evidence. *Prince v. Am. Bank of Tex.*, 359 S.W.3d 380, 382 (Tex. App.—Dallas 2012, no pet.).

### *The Record*

The motion for summary judgment was filed on November 3, 2011.[5] The filed copy contains a certificate attesting to service on Mayfield the same day via certified mail, return receipt requested. It is undisputed the summary-judgment hearing was held on December 12.

In her affidavit attached to the motion for sanctions, Mayfield averred as follows: on November 3, appellees' counsel mailed Mayfield "a lot of plain pages

---

[5] All references to dates in this discussion are to 2011.

and cut off pages" with no certificate of service or conference; and on November 14, counsel mailed Mayfield an envelope "with a Motion for Summary Judgment." Mayfield did not aver that the latter motion was incomplete other than stating it lacked a certificate of service. Mayfield further averred there was no notice of hearing included with either mailing, although she did not affirmatively state that she never otherwise received notice. Mayfield attached to her motion for sanctions what she contends are the incomplete copies of the motion for summary judgment that she allegedly received.

In response to the motion for sanctions, appellees presented the affidavit of their counsel who averred,

- On November 3, he sent a true and correct copy of the motion for summary judgment to Mayfield's address, as shown on her pleadings, by certified mail, return receipt requested. Counsel did not receive the return receipt ("green card") for that mailing. Therefore, he confirmed on the postal service website that the mailing was delivered to Mayfield's address on November 5.

- When counsel mailed the motion, he had not yet obtained a hearing date but obtained one later that day. On November 4, he sent a notice advising the hearing was set for December 12, to Mayfield at the same address, by certified mail, return receipt requested, and regular mail. Subsequently, counsel received the green card, signed by "Lucille Martin" and showing delivery of that mailing on November 5.

- Because counsel did not have a green card for service of the motion, on November 14, he again sent true and correct copies of the motion and notice of hearing to Mayfield at the same address, by certified mail, return receipt requested, and regular mail. He received a green card signed by Mayfield showing delivery on November 16.

Counsel attached the following to his affidavit: the printed postal service webpage showing delivery of the motion for summary judgment on November 5; the green card showing delivery of the notice of hearing on November 5; and the

6

green card showing delivery of the motion and notice of hearing again on November 16.

As counsel mentioned in his affidavit, the green card for the November 16 delivery appears to be signed by "Helen Mayfield," although the name "J. Johnson" is printed in the box below the signature. Counsel averred that Mayfield has written that same name on green cards for other deliveries, including in a different suit. Counsel attached examples of such green cards to his affidavit.

The trial court held a hearing on the motion for sanctions. At the hearing, Mayfield did not present any additional evidence; she reiterated she was not served with a complete motion for summary judgment or notice of hearing and accused appellees' counsel of forging Mayfield's signature on the green cards.

*Discussion*

In its order denying the motion for sanctions, the trial court recited that it considered both the motion for sanctions and the response and found that (1) Mayfield was served with the motion for summary judgment and notice of hearing on November 14, (2) she received those items on November 16, and (3) her motion for sanctions was "entirely without merit." Appellees' evidence, recited above, supported the findings. Because Mayfield was served with those items more than twenty-four days before the summary judgment hearing, the trial court did not abuse its discretion by denying any motion for new trial and the request for sanctions.

**B.    Substantive Challenges to the Summary Judgment**

Mayfield's substantive challenges fall into two general categories: (1) some of appellees' summary judgment evidence was inadmissible; and (2) appellees failed to establish their summary-judgment grounds.

7

### 1.    Admission of Evidence

In one of her stated issues, Mayfield argues her "conviction" and "documents" from her criminal trial were inadmissible as summary-judgment evidence under Texas Rule of Evidence 609(e) because appeal of the conviction was pending in the United States Supreme Court. Rule 609 is wholly inapplicable in this case; it prescribes circumstances under which a prior criminal conviction is admissible *for purposes of impeaching a witness* and provides that pendency of an appeal renders a conviction inadmissible for that purpose. *See* Tex. R. Evid. 609, 609(e).

Additionally, in the "Summary of Argument" section of her appellate brief, Mayfield also complains the probable cause statements presented by appellees were not certified. We reject this complaint because the summary-judgment rules provide, "**Sworn** or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *See* Tex. R. Civ. P. 166a(f) (emphasis added). In her affidavit supporting the motion for summary judgment, Huffman swore the probable cause statements attached to the motion were true and correct copies of documents she obtained from the district clerk.

### 2.    Summary Judgment Grounds

Appellees moved for summary judgment on several grounds applicable to all appellees: (1) the articles were constitutionally and statutorily privileged as accurate reporting of legal documents and proceedings; (2) the articles were substantially true; and (3) Mayfield's claim was barred by the statute of limitations.

### *Standard of Review and Applicable Law*

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See*

8

Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). A defendant moving for traditional summary judgment must negate at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). If the defendant establishes his right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We review a summary judgment *de novo*. *Knott*, 128 S.W.3d at 215. We take all evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in her favor. *Id.*

When, as in the present case, the movant asserts multiple summary judgment grounds and the trial court does not specify in the order the ground on which summary judgment was granted, the appellant must challenge all independent grounds on appeal, and we may affirm if any ground is meritorious. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). Mayfield has not established the trial court erred by granting summary judgment on, at least, the ground that the articles were statutorily privileged.[6]

The United States Supreme Court has long recognized a common law judicial proceedings privilege applicable to a publisher. *Neely v. Wilson*, 418 S.W.3d 52, 68 (Tex. 2013) (citing *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)). In Texas Civil Practice and Remedies

---

[6] Appellees also presented a summary judgment ground, with supporting evidence, applicable only to Barnwell: neither he nor his company was involved in newsgathering, reporting, or editing articles for The Eagle, including the articles about Mayfield. We affirm summary judgment in his favor on that ground because it is unchallenged on appeal. *See Star–Telegram, Inc.*, 915 S.W.2d at 473. Regardless, our disposition relative to the privilege ground applies equally to Barnwell.

Code section 73.002, entitled "Privileged Matters," the Texas Legislature codified the judicial proceedings privilege and expanded it to other official proceedings. *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 73.002 (West 2011). The statute provides, in pertinent part, that "publication by a newspaper . . . is privileged and is not a ground for a libel action" if the publication is "a fair, true, and impartial account of . . . a judicial proceeding . . . [or] an official proceeding, other than a judicial proceeding, to administer the law." Tex. Civ. Prac. & Rem. Code Ann. § 73.002(a), (b)(1)(A), (B). The privilege extends only to statements that are (1) "substantially true and impartial reports of the proceedings," and (2) "identifiable by the ordinary reader as statements that were made in the proceeding." *Neely*, 418 S.W.3d at 68 (citing *Denton Publ'g Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1971)). Where the facts are undisputed and the language used in the publication is not ambiguous, the question of privilege is ordinarily one of law for the court. *Boyd*, 460 S.W.2d at 884.

### The Record

Even under a liberal construction of her brief, we conclude that Mayfield does not attack the privilege ground relative to the articles written by Watkins; the entire focus of Mayfield's argument on this ground is Huffman's article. Accordingly, Mayfield has waived any challenge to the summary judgment on her claims based on Watkins's article. *See Star–Telegram, Inc.*, 915 S.W.2d at 473; *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 384 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (holding appellant waived challenge to summary judgment on claim to the extent it was based on one alleged wrongdoing of defendant by advancing argument on appeal only with respect to a different alleged wrongdoing); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.–Houston [14th Dist.] 2005, no pet.) (recognizing that, although our court

10

reasonably and liberally construes briefs, appellant must present some specific argument and analysis to attack summary-judgment ground). We will consider the privilege ground only with respect to Huffman's article.

In her affidavit supporting the motion for summary judgment, Huffman averred,

> I wrote the newspaper article dated August 12, 2007, titled "Police charge woman in scam" and which appeared in the Bryan-College Station Eagle. The only information I had about the matters in the article came from the College Station Police Department Probable Cause Statements that were publicly available in the Brazos County District Clerk's Office. The article I wrote accurately stated what was contained in the Probable Cause Statements. I did not doubt the accuracy of anything I wrote, nor did I have any reason to question the accuracy of anything in the Probable Cause Statements. The "College Station Police Department Probable Cause Statements" that are attached to Defendants' Motion for Summary Judgment as Exhibit A are true and correct copies of the documents I obtained from the District Clerk's Office and on which I based my August 12, 2007 article.

Appellees also presented Huffman's article, which reported,

> College Station police ended a seven-month investigation Saturday with the arrest of a 59-year-old lawyer who admitted to participating in six e-mail scams over the past five years, authorities said.

> Helen Mayfield told police she was the victim of a common financial scam that generally features a supposed foreign dignitary offering millions in exchange for help. But police, who worked with the FBI on the case, said the College Station woman was a willing participant seeking financial gain.

> Mayfield was charged with 12 counts of forgery of a financial instrument after police said she cashed fake $500 American Express Travelers Cheques at First National Bank, where she had an account.

11

She cashed 14 checks, according to police. The bank contacted police after a dozen were returned.

Mayfield told police she cashed the checks for a client in exchange for a percentage of the cash. The client, she said, was a West African widow having trouble accessing her late husband's $15 million fortune.

Investigators discovered she was wiring money to Nigeria, Hong Kong, Taiwan, Ontario, Ghana and the Netherlands. She told police she was involved in six scams since 2002, saying she continued hoping someday to get money she was promised.

Mayfield remained jailed Saturday in lieu of $240,000 bail.

In her pleading, Mayfield complained of the following portions of the article:

- Mayfield admitted she was involved in six e-mail scams over the past five years (since 2002).

- According to police, Mayfield cashed fourteen fake travelers checks at a bank where she had an account.

- Mayfield told police that she cashed the checks in exchange for a percentage of the cash.

Appellees also presented three probable cause statements: one was executed by the investigating officer, apparently to obtain an arrest warrant, and detailed the basis for the forgery charges; the other two were executed by an assisting officer and provided supplemental information.

### *Discussion*

Mayfield does not argue there is no section 73.002 privilege when a publication is based on a probable cause statement, such as those executed by the police relative to Mayfield's criminal case; i.e., she does not dispute appellees'

12

contention that such a statement constitutes "a judicial proceeding . . . [or] an official proceeding, other than a judicial proceeding, to administer the law." *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.002(a), (b)(1)(A), (B). Rather, Mayfield attacks the privilege ground by contending (1) Huffman's affidavit was perjured, (2) the probable cause statements were not public records, and (3) Huffman did not report in the article that it was based on the statements.

With respect to the first two contentions, Mayfield did not timely present any evidence controverting Huffman's averments that she (1) based her article on, at least, the first probable cause statement, (2) did not doubt its accuracy, and (3) obtained the statements from the district clerk's records, much less evidence showing the affidavit was perjured.[7] Mayfield's summary judgment responses were not timely because they were filed three days before the hearing. *See* Tex. R. Civ. P. Rule 166a(c) (providing that, except on leave of court, a summary-judgment response must be filed no later than seven days before hearing date). Because nothing in the record indicates the trial court granted leave for late filing, we presume it did not consider the responses. *See INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985); *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Therefore, we will not consider whether any evidence attached to the responses controverted Huffman's affidavit. Instead, Mayfield is limited to challenging the legal sufficiency of

---

[7] We recognize Huffman broadly suggested her article was based on all three probable cause statements when the two supplemental statements were executed after publication of the article. However, Mayfield presented no evidence that the incorrect suggestion the article was also based on the two latter statements rose to the level of perjury. *See* Tex. Penal Code Ann. 37.02(a) (West 2011) (providing perjury includes "intent to deceive" element). In fact, Mayfield does not argue Huffman's affidavit was perjured or otherwise defective because two of the statements were executed after the article. Even Mayfield views the first statement as the sole relevant one because she argues only that Huffman's article was not based on that statement. Therefore, we will address the probable cause statement that preceded her article.

13

appellees' privilege ground. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993).

In this regard, to support her "perjury" contention, Mayfield primarily attacks the truth of the police officer's allegations in the probable cause statement. However, the "official/judicial proceedings privilege assesses whether the reporter's account of the proceedings (not the underlying allegations made in those proceedings) was fair, true, and impartial." *Neely*, 418 S.W.3d at 68. Mayfield does not expressly compare the article to the probable cause statement. Nonetheless, we have performed such comparison and conclude the portions of the article complained of in Mayfield's pleading were "fair, true, and impartial" accounts of the allegations in the probable cause statement.

Mayfield also complains Huffman did not report in the article that it was based on the probable cause statement and reported the facts as though they were true. However, she cites no authority that Huffman was required to specifically identify the document from which she obtained her information. Significantly, the contents of the article were "identifiable by the ordinary reader as" allegations made by the police, rather than Huffman's own portrayal of facts underlying the criminal allegations. *See id.* at 68.

Finally, as mentioned above, after appellees moved for summary judgment, Mayfield amended her petition to add claims for intentional infliction of emotional distress and business disparagement. Therefore, these causes of action were not directly addressed in the motion for summary judgment. However, Mayfield does not complain on appeal that the privilege ground failed to also address the new claims and the trial court granted more relief than requested by appellees by dismissing all claims on that ground. Consequently, Mayfield has waived any such contention. *See Sonic Sys Int'l*, 278 S.W.3d at 384–85.

In summary, the trial court did not err by granting summary judgment on all of Mayfield's claims.

## C.     Complaint Regarding the Record

Mayfield contends her due process rights were violated because she is indigent and entitled to a free record but the district clerk omitted exhibits to her petition from the record filed in our court. We reject this contention because the gist of the argument is not that the district clerk inadvertently failed to file a complete record but rather an unsupported claim that the trial court ordered removal of the exhibits from the record. Moreover, Mayfield did not request the clerk to supplement our record with any allegedly omitted exhibits to her petition, as she was permitted to do if she believed a requisite item was missing. *See* Tex. R. App. P. 34.5(c)(1). Nor did she invoke the procedure for correcting the record if an item is lost or destroyed. *See id.* 34.5(e). And, the allegedly omitted exhibits are immaterial to our disposition because Mayfield asserts they concern the statute-of-limitations ground, which we need not address.

We overrule all of Mayfield's issues and affirm the trial court's judgment.


/s/     John Donovan
Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown.