ACCEPTED
14-14-00384-cv
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
6/26/2015 8:35:53 PM
CHRISTOPHER PRINE
CLERK

# No. 14-14-00384-CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
6/26/2015 8:35:53 PM
CHRISTOPHER A. PRINE
Clerk

In the Fourteenth Court of Appeals
Houston, Texas

**AJAZ R. SIDDIQUI, NAJEEB SIDDIQUI AND
SUNCOAST ENVIRONMENTAL AND CONSTRUCTION, INC.,**
Appellants,

v.

**FARHAN S. QURESHI AND SYED KHALID ALI,**
Appellees.

On Appeal from the 80th Judicial District Court
Harris County, Texas
Trial Court Cause No. 2010-66787

## APPELLEES' BRIEF

Peter M. Kelly
State Bar No. 00791011
KELLY, DURHAM & PITTARD, L.L.P.
1005 Heights Boulevard
Houston, Texas 77008
Telephone:  713.529.0048
Facsimile:   713.529.2498
Email: pkelly@texasappeals.com

**COUNSEL FOR APPELLEES - Oral Argument Requested**

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................... ii

INDEX OF AUTHORITIES ................................................ iii

STATEMENT OF FACTS .................................................... 1

SUMMARY OF ARGUMENT ................................................. 9

STANDARD OF REVIEW .................................................. 10

     A.     Findings of fact--legal and factual sufficiency .................. 11

     B.     Conclusions of law--de novo ................................. 13

ARGUMENT AND AUTHORITY ............................................. 14

     I.     The trial court's fraud finding is supported by legally
           sufficient evidence (Response to Siddiqui Issue No. 2) ........... 14

           A.     There is no need for the trial court to make
                  particularized fact findings ............................. 14

           B.     The Siddiquis owed Qureshi and Ali a duty to
                  disclose material facts, and breached that duty. ........... 17

           C.     The Siddiquis made multiple misrepresentations or
                  nondisclosures to Qureshi and Ali, causing damages
                  .................................................... 19

           D.     Qureshi and Ali established the Siddiquis' scienter
                  with circumstantial evidence. ......................... 20

     II.    The trial court's finding of a breach of fiduciary duties is
           supported by more than a scintilla of evidence (Response
           to Siddiqui Issue No. 1). ................................. 22

A. The Siddiquis and Qureshi and Ali were in an informal fiduciary relationship. . . . . . . . . . . . . . . . . . . . . . . . 22

B. Suncoast, too, is liable for the breach of the Siddiquis' fiduciary duties (Response to Siddiqui Issue No. 5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

C. The damages flowing from the breach of fiduciary duty have not been separately challenged. . . . . . . . . . . . . . . 25

III. Qureshi and Ali introduced legally sufficient evidence to support an award of restitution damages for the Siddiquis' fraud (Response to Siddiqui Issue No. 3). . . . . . . . . . . . . . . . . . . . . 25

IV. Exemplary damages were properly awarded (Response to Siddiqui Issue No. 6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

V. The Siddiquis are not entitled to a judgment in their favor (Response to Siddiqui Issue No. 7). . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

TABLE OF AUTHORITIES

**Case** page

*Allen v. Devon Energy Holdings, L.L.C.*,
367 S.W.3d 355 (Tex. App.--Houston [1st Dist.] 2012,
pet. granted, j'ment set aside, remanded by agmt.). . . . . . . . . . . . . . . 23, 29

*Am. Med. Int'l, Inc. v. Giurintano,*
821 S.W.2d 331 (Tex. App.--Houston [14th Dist.] 1991, no writ). . . . . . . 18

*Anderson v. City of Seven Points*,
806 S.W.2d 791 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Arias v. Brookstone, L.P.*,
265 S.W.3d 459 (Tex. App.--Houston [1st Dist.] 2007, pet. denied). . . . . 12

*Associated Indem. Corp. v. CAT Contracting, Inc.,*
964 S.W.2d 276 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Barrientos v. Nava*,
94 S.W.3d 270 (Tex. App.--Houston [14th Dist.] 2002, no pet.). . . . . . . . . 12

*Behee v. Mo. Pac. Ry. Co.*,
71 Tex. 424, 9 S.W. 449 (1888). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Black v. Dallas Cnty. Welfare Unit*,
835 S.W.2d 626 (Tex. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*BMC Software Belgium, N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bradford v. Vento,*
48 S.W.3d 749 (Tex. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brown v. Brown*,
236 S.W.3d 343 (Tex. App.--Houston [1st Dist.] 2007, no pet.). . . . . . 17-18

*Burrow v. Arce*,
997 S.W.2d 229 (Tex. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Citizens Nat'l Bank v. Allen Rae Invs., Inc.*,
142 S.W.3d 459 (Tex. App.--Fort Worth 2004, no pet.). . . . . . . . . . . . . . . 18

*City of Harker Heights v. Sun Meadows Land, Ltd.*,
830 S.W.2d 313 (Tex. App.--Austin 1992, no writ). . . . . . . . . . . . . . . . . . 27

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*,
823 S.W.2d 591 (Tex. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Cruz v. Andrews Restoration, Inc.*,
364 S.W.3d 817 (Tex. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Digby v. Texas Bank*,
943 S.W.2d 914 (Tex. App.--El Paso 1997, writ denied). . . . . . . . . . . . . . 21

*Estate of Stonecipher v. Estate of Butts*,
591 S.W.2d 806 (Tex. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Finch v. Finch,*
825 S.W.2d 218 (Tex. App.--Houston [1st Dist.] 1992, no writ). . . . . . . . . 15

*Flanary v. Mills*,
150 S.W.3d 785 (Tex. App.--Austin 2004, pet. denied). . . . . . . . . . . . . . 15

*French v. French*,
385 S.W.3d 61 (Tex. App.--Waco 2012, pet. denied). . . . . . . . . . . . . . . . 21

*Greater Hous. German Shepherd Dog Rescue, Inc. v. Lira*,
447 S.W.3d 365 (Tex. App.--Houston [14th Dist.] 2014, pet. filed). . . . . . 13

*Guevara v. Lackner*,
     447 S.W.3d 566 (Tex. App.--Corpus Christi 2014, no pet.). . . . . . . . . . . 24

*Henry S. Miller Co. v. Bynum*,
     836 S.W.2d 160 (Tex. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re J.R.,*
     907 S.W.2d 107 (Tex. App.--Austin 1995, no writ). . . . . . . . . . . . . . . . . 27

*In re Marriage of Morris,*
     12 S.W.3d 877 (Tex. App.--Texarkana 2000, no pet.). . . . . . . . . . . . . . . 15

*In re Marriage of Jameson,*
     No. 07–02–00476–CV, 2004 WL 237829 (Tex. App.--Amarillo 2004,
     pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*In re L.A.F.*,
     270 S.W.3d 735 (Tex. App.--Dallas 2008, pet. denied). . . . . . . . . . . . . . 11

*In re M.M.M.,*
     229 S.W.3d 821 (Tex. App.--Fort Worth 2007, no pet.). . . . . . . . . . . . 15-16

*Ins. Co. of N. Am. v. Morris,*
     981 S.W.2d 667 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
     341 S.W.3d 323 (Tex. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28

*James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.*,
     403 S.W.3d 360 (Tex. App.--Houston [1 Dist.] 2013, no pet.). . . . . . . . . 21

*Kinzbach Tool Co. v. Corbett–Wallace Corp.*,
     160 S.W.2d 509 (Tex. 1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Leonard v. Eskew*,
     731 S.W.2d 124 (Tex. App.--Austin 1987, writ ref d n.r.e.). . . . . . . . . 10-11

*Lundy v. Masson*,
     260 S.W.3d 482 (Tex. App.-Houston [14th Dist.] 2008, pet. denied). . . . . 22

*Matter of Marriage of Merrikh*,
   14-14-00024-CV, 2015 WL 2438770 (Tex. App.--Houston [14th Dist.]
   May 19, 2015, n.p.h.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Meyer v. Cathey*,
   167 S.W.3d 327 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Miller v. Miller,*
   700 S.W.2d 941 (Tex. App.--Dallas 1985, writ ref'd n.r.e.). . . . . . . . . . . 23

*Nelson v. Najm*,
   127 S.W.3d 170 (Tex. App.--Houston [1st Dist.] 2003, pet. denied). . . . 28

*Quigley v. Bennett*,
   227 S.W.3d 51 (Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Rivers v. Charlie Thomas Ford, Ltd.,*
   289 S.W.3d 353 (Tex. App.--Houston [14th Dist.] 2009, no pet.). . . . . . . 17

*Schlumberger Tech. Corp. v. Swanson*,
   959 S.W.2d 171 (Tex. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sears, Roebuck and Co. v. Nichols,*
   819 S.W.2d 900 (Tex. App.--Houston [14th Dist.] 1991, writ denied). . . . 13

*Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,*
   237 S.W.3d 379 (Tex. App.--Houston [14th Dist.] 2007, no pet.). . . . . . . 18

*Texas Bank & Trust Co. v. Moore,*
   595 S.W.2d 502 (Tex. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Transp. Ins. Co. v. Moriel,*
   879 S.W.2d 10 (Tex. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Tuck v. Miller,*
   483 S.W.2d 898 (Tex. Civ. App.--Austin 1972, writ ref'd n.r.e.). . . . . . . . 23

*Turner v. Franklin*,
   325 S.W.3d 771 (Tex. App.--Dallas 2010, pet. denied). . . . . . . . . . . . . . 20

*Vejara v. Levior lnt'l LLC,*
     No. 04–11–00595–CV, 2012 WL 5354681 (Tex. App.--San Antonio
     Oct. 31, 2012, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Vickery v. Comm'n for Lawyer Discipline,*
     5 S.W.3d 241 (Tex. App.--Houston [14th Dist.] 1999, pet. denied). . . . . . 10

*Village Place, Ltd. v. VP Shopping, LLC,*
     404 S.W.3d 115 (Tex. App.--Houston [1st Dist.] 2013, no pet.). . . . . . 11-12

*Volume Millwork, Inc. v. West Houston Airport Corp.,*
     218 S.W.3d 722 (Tex. App.--Houston [1st Dist.] 2006,
     pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*White v. Zhou Pei,*
     452 S.W.3d 527 (Tex. App.--Houston [14th Dist.] 2014, no pet.).. . . . . . . 18

*Willis v. Donnelly,*
     199 S.W.3d 262 (Tex. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Statutes and Rules**

RESTATEMENT (FIRST) OF RESTITUTION § 152 (1937). . . . . . . . . . . . . . . . . . . . . . 26

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 37.. . . . . . 27

STATEMENT OF FACTS

The appellants have accurately stated the chronology of events; this Statement of Facts is largely taken from the appellants' brief. Supplemental facts--in particular, those relating to the Siddiquis' nondisclosures and misrepresentations--are recounted in the sections of this brief to which they are relevant.

Brothers Ajaz Siddiqui and Najeeb Siddiqui jointly and equally own Suncoast Construction, Inc. 2 RR 52-53 2 RR 52; 4 RR 90. Suncoast and the Siddiquis have built a variety of projects, including gas stations, shopping centers, travel centers, outside fuel systems, multifamily townhomes, and garden apartments. 2 RR 53, 138-139; 4 RR 90-91. In 2003, the Siddiquis purchased a 4.26 acre tract from the Klein ISD and developed it as Champions Valley Subdivision, which included 36 townhomes, a Texaco station, and a retail building. 2 RR 54; 3 RR 4-5, 2 RR 55-56; 4 RR 91 2 RR 55. The retail building house a Hartz Chicken Restaurant, which was owned and operated by Blueline Real Estate L.P. – 12011 Bammel North Houston, Houston, TX 77066 ("Bammel"). The general and limited partners of Blueline were two entities owned by the Siddiquis, Fancy Bites, LLC and Quick Eats, LLC.

On January 8, 2007, in separate agreements, the Siddiquis sold to Farhan Qureshi and Syed Ali each a 25% membership interest in Quick Eats and Fancy Bites, the general and limited partners of Blueline, for a combined 50% interest. 2 RR 63-64, 66; PX 5, PX 6, 6A RR. Qureshi and Ali each paid $212,500.00 for the 25%

interests. *Id.* Ajaz Siddiqui prepared the Sale and Purchase Agreements. 2 RR 64; PX 5, PX 6, 6A RR. There is a written representation in the Sale and Purchase Agreements that it "contains a complete and accurate legal description of each parcel of real property owned by, leased to, or leased by Company." The Sale and Purchase Agreement between Qureshi and the Siddiquis contains an Exhibit A, which is a plat of the Bammel tract where Blueline built the first Hartz Chicken restaurant. 2 RR 65; PX 5, page 00348, 6A RR. The Sale and Purchase Agreement between Ali and the Siddiquis contains no attached exhibit with any real property description or real property plat. PX 6, 6A RR. Ali testified that the Siddiquis verbally represented to him that the Bammel tract was owned by Blueline, Fancy Bites or Quick Eats. 4 RR 178.

On the date of the sales to Qureshi and Ali, the Bammel property was titled in the name of Sunnyland Development, Inc., a holding company owned solely by Ajaz Siddiqui. 2 RR 64-66. Title to the Bammel property was conveyed to Blueline, at no cost, on May 12, 2008, in connection with the loan to Blueline from Southwestern National Bank for construction of the restaurant on Antoine Drive. *See* 2 RR 64-66, 98; 1 CR 827; PX 37, 6E RR.

Following Qureshi's and Ali's purchases, the Siddiquis, Qureshi and Ali were each 25% members and owners of Fancy Bites and Quick Eats. All four individuals were managers of Fancy Bites and Quick Eats and had, on paper at least, equal voting

power and ownership. 2 RR 71-73; 4 RR 100, 128; 5 RR 26, 97-98, 121. On October 24, 2007, certificates of amendment were filed with the Secretary of State to identify the Siddiquis, Qureshi and Ali as managers of Fancy Bites and Quick Eats. PX 16, PX 18, 6A RR.

Effective January 23 and January 24, 2008, the Siddiquis, Qureshi and Ali executed Restated Agreements for Blueline, Fancy Bites and Quick Eats. PX 19, 20, 6B RR; PX 21 6C RR. The Restated Agreements each contain a provision which states that the entity may contract with any of the partners, managers, members or their affiliates for the purchase of goods and services for the benefit of the entity. 4 RR 185-186; PX 19, pages 00433-34, §3.3(b), PX 20, p. 00166, § 6.03, 6B RR; PX 21, p. 00920, § 6.03; 6C RR. The Blueline Agreement identifies Fancy Bites as the general partner with a 1% ownership interest and Quick Eats as the limited partner with a 99% ownership interest. PX 19, page 00470, 6B RR.

On February 20, 2007, Qureshi completed a Confidential Franchise Application on behalf of Blueline for the Hartz Chicken Restaurant on Bammel. 2 RR 67; PX 7, 6A RR. The Siddiquis had no involvement in applying for the franchise. 2 RR 67. On December 07, 2007, January 11, 2008, and April 30, 2008, Ali signed and filed Assumed Name Records on behalf of Blueline and Fancy Bites for the Bammel restaurant. 2 RR 69, 82- 83; PX 10, PX 11, 6A RR; PX 28, PX 29, 6C RR. The Bammel restaurant opened in March of 2008. 2 RR 83. Ali hired the first manager

for the Bammel restaurant. 2 RR 84-85; 4 RR 101, 131. Ali fired the first manager in July of 2008. 2 RR 88-89; 4 RR 101, 132. Between March 2008 to November 2008, the Bammel location never had a net profit, except for April of 2008, when it had a net profit of $260.28. 2 RR 87-88, PX 30, 6C RR.

An appraisal of the Bammel location as of March 5, 2008, was prepared for Southwestern National Bank. 2 RR 140; PX 105; 60-1, 60-2 RR. Using a replacement cost approach, the independent appraiser valued the restaurant at $780,000.00, $625,143.00 for costs of construction and $154,000.00 for land costs. 4 RR 76-77; PX 105, p. V, 60-1 RR; pp. 47-55, 60-2 RR. Ajaz Siddiqui testified that on March 5, 2008, the market value of the Bammel restaurant and real estate was $850,000.00 and that the reasonable and necessary cost to construct the restaurant was $850,000.00. 2 RR 95, 148-149. Ajaz Siddiqui prepared a compilation of the costs to develop and construct the Bammel tract between 2003 and the completion of construction in 2008. 2 RR 90-94; PX 32, 6D-1-6D-3 RR. The total costs were $841,682.46. PX 32, page 2380, 6D-1 RR.

Qureshi owned a tract of land on Antoine Drive and had a Conoco station across the street. 2 RR 75, 97; 4 RR 108. After Qureshi and Ali purchased their 25% interests each in Fancy Bites and Quick Eats, Qureshi contracted with Suncoast to build a retail center. *See* 3 RR 106-107; DX 8, 6T RR; 9-26-2007 contract to construct retail center. The Siddiquis constructed a pad site on this location. 2 RR

74. The Siddiquis, Qureshi and Ali decided this would be a good location for Blueline to open a second Hartz restaurant. 2 RR 74-76. Blueline agreed to buy the pad site from Qureshi for $150,000.00. 2 RR 75-76, 97; PX 35, PX 36, 6E RR. The pad site for the restaurant purchased by Blueline from Qureshi for $150,000.00 represented 10 to 15 percent of the property owned by Qureshi. 2 RR 76. Qureshi had purchased the entire property for around $300,000.00. 2 RR 76.

In January of 2008, Blueline submitted a loan application to Southwestern National Bank to obtain a construction loan for the Antoine Hartz Chicken Restaurant. PX 22, 6C RR. The Siddiquis, Qureshi and Ali all signed the loan application. The amount sought was $839,000.00 for "land acquisition, new construction/expansion/repair." *Id.*

On January 28, 2008, Southwestern National Bank sent separate loan commitments approving a Construction Loan and Commercial Loan for Blueline for the Antoine restaurant. PX 25, PX 26, 6C RR. The Construction Loan is in the amount of $645,000.00 "to provide land and construction financing on Hartz Krispy Chicken and Rolls located at Antoine and West Mt. Houston, Houston, Texas." PX 25. The Commercial Loan is in the amount of $194,000.00 "to purchase FF & E [Furniture, Fixtures and Equipment]" for this Antoine location. PX 26. The two loan commitments are executed by Blueline, Fancy Bites and all of the individuals as guarantors. PX 25, PX 26. Southwestern National Bank did not loan Blueline any

money for working capital. 2 RR 79-80; 4 RR 106, 163, 167; 5 RR 163. There was never any discussion between the Siddiquis and Qureshi and Ali that any of the loans from Southwestern National Bank would be used for working capital for Blueline. *Id.*

Fancy Bites filed Assumed Name Records for the Antoine Hartz Chicken Restaurant on April 16, 2008. 2 RR 82-83; PX 27, 6C RR. The document was signed by Ali. Id. In connection with the development of the Hartz Chicken restaurant located at Antoine Drive, the partnership, Blueline, and the four individuals executed and delivered to Southwestern National Bank two (2) promissory notes PX 38, 44, 45, 48, 6E RR, deeds of trust PX 43, PX 46, PX 47, 6E RR, and guaranty agreements pursuant to which the Siddiquis, Qureshi and Ali individually guaranteed Blueline's debt. 2 RR 98-100; 5 RR 4-5; PX 39, 40, 41 and 42, 6E RR. On July 21, 2008, and July 23, 2008, Blueline filed Assumed Name Certificates with the Secretary of State for the Hartz restaurants at the Bammel and Antoine locations. PX 13, PX 14, 6A RR. Both documents are signed by the Siddiquis, Qureshi and Ali as managers of Fancy Bites. *Id.*

Construction on the Antoine Drive restaurant commenced on May 27, 2008. 2 RR 103-104; PX 51, 6F RR. As construction on Antoine Drive progressed, Suncoast submitted draw requests to Southwestern National Bank, which sent an inspector to the site to file a report on the construction and to approve each draw. 2

RR 104-107; 4 RR 79; PX 53-58, 6G RR; PX 59, 6H RR. The Siddiquis, Qureshi and Ali, on behalf of Blueline, executed an Affidavit of Completion, stating that the Antoine restaurant was completed on July 28, 2009. DX 47, 6W RR. The Antoine Drive store opened in November of 2009. 2 RR 108. Qureshi and Ali later fired the manager of the Antoine Drive store and operated it themselves for three months. 5 RR 16, 125, 151. They then shut the store down. *Id.*

The cost to complete construction of the Antoine Drive restaurant was $728,927.00. 2 RR 120-121; PX 73, 6I-1, 6I-2 RR. Southwestern National Bank disbursed $689,000 for construction and equipment. 3 RR 8; 4 RR 77. An independent appraisal of the Antoine Drive restaurant as built, valued as of March 2008, was prepared for Southwestern National Bank. PX 106; 6P- 1, P-2 RR. Using a replacement cost approach, the independent appraiser valued the restaurant at $785,000.00, $636,137.00 for construction costs and $150,000.00 for land costs. 4 RR 77; PX 106, p. V; 6P-1 RR; pp. 47-55, 6P- 2 RR.

The two restaurants did not generate sufficient revenues to pay for insurance, debt and property taxes and certain vendors. 2 RR 110-112, 122-123; 4 RR 107-108; PX 74, PX 76, 6J RR. The Siddiquis paid the property taxes in 2009, 2010 and 2011. 2 RR 110. For 2008, 2009, and 2010, Blueline had negative income for each year as follows: $152,169, $199,132 and $134,350. 2 RR 128-129; PX 81, 6J RR. Ajaz Siddiqui and Najeeb Siddiqui paid $297,947.08 in expenses for Blueline because of

insufficient revenue. 2 RR 130-132; PX 88, 6K RR; PX 98, 6L RR Of that amount, $191,170.47 was for loan payments and $4,579.12 was for insurance. 2 RR 132-136; PX 98, 6L RR; PX 100, 6M RR. Qureshi and Ali began paying one-half of the note payments in July of 2010. 2 RR 132. The various payments for Blueline made by Ajaz Siddiqui and Najeeb Siddiqui were made by companies that Ajaz Siddiqui owned 100% or owned 50/50 by the Siddiquis. 2 RR 132-133, 135-136, 138; 4 RR 110. These payments were treated as taxable distributions from the companies to the Siddiquis, making the payments by the Siddiquis individually. 2 RR 133, 135-136, 138; 4 RR 110.

Hartz sent repeated notices of default to Blueline and the individuals stating that Blueline had defaulted on required franchise payments and note obligations. 2 RR 110-111, 119-120; PX 61, PX 72, 6H RR; PX 78, 6J RR; PX 82, 6K RR. The Siddiquis met with Qureshi and Ali in July of 2008, December of 2008, and February of 2009 to discuss the negative cash flow of the Bammel restaurant. 2 RR 112-118; 4 RR 82-83, 102-106, 120, 148-149, 170-171. Qureshi and Ali each agreed to contribute 25% toward the negative cash flow of Blueline. *Id.*; 2 RR 131. Qureshi and Ali made payments each time for the shortages. *Id.*; PX 63, 64, 65, 66, 6H RR.

On July 1, 2010, October 4, 2010, and October 21, 2010, Southwestern National Bank sent notice that Blueline was past due on loan payments and requesting income tax returns and financial statements for Blueline, Fancy Bites and

the individuals. 2 RR 124-126; PX 77, 6J RR. On March 11, 2011, counsel for Southwestern National Bank wrote to lawyers for the Siddiquis and Qureshi and Ali stating that the bank intended to post the properties for foreclosure unless various financial documentation was provided and a payment of $11,445.57 was made by March 21, 2011. 2 RR 127-128; PX 80, 6J RR.

The loan payments to Southwestern National Bank were current, but financials and tax returns were not provided. 3 RR 9. The bank agreed to a reinstatement agreement that Ajaz Siddiqui and Najeeb Siddiqui signed. 3 RR 9; PX 109, PX 110, 6Q RR. Qureshi and Ali did not agree to the form of reinstatement agreement, so the bank accelerated the notes and posted the properties for foreclosure. 3 RR 9-10; 5 RR 122-123; PX 107, 108, 111, 6Q RR. Blueline filed for bankruptcy on February 7, 2012. 3 RR 10-11; 5 RR 123; PX 113, 6Q RR. The properties were purchased by the bank in foreclosure on July 3, 2012. 3 RR 9; PX 116, 6R RR. Qureshi then repurchased the Antoine tract (that he previously owned) from the bank. 5 RR 124. The bankruptcy was converted to a Chapter 7 on July 19, 2012. PX 115, 6R RR.

At the time of trial, Blueline, Fancy Bites and Quick Eats had no assets. 3 RR 8-9.

## SUMMARY OF ARGUMENT

The Siddiquis routinely made partial disclosures to Qureshi and Ali--telling them of some of the costs, showing them some of the records, only telling them half

the truth about the ownership of some real property. This triggered the duty for full disclosure; and when the Siddiquis knowingly failed to provide those full disclosures, they defrauded Qureshi and Ali. And even though the Siddiquis and Qureshi and Ali did not have a preexisting relationship, the Siddiquis conduct during the course of their business venture--exerting complete control of the management and operations of the venture, to the point of self-dealing with another company owned by the Siddiquis--gave rise to an informal fiduciary relationship. Those same nondisclosures and misrepresentations were a breach of the fiduciary duties owed by the Siddiquis to Qureshi and Ali.

Under Texas law, Qureshi and Ali are entitled to restitution for the losses they suffered as a result of the fraud, to be put back in the position they were in before the fraud occurred. Accordingly, they are entitled to be reimbursed $425,000 (their initial investment), plus the $89,482.68 in loan payments they made to the bank in an effort to keep the venture afloat. That is exactly what the trial court awarded them.

### STANDARDS OF REVIEW

This court is bound to assume the validity of the trial court's judgment. *Leonard v. Eskew*, 731 S.W.2d 124, 131 (Tex. App.--Austin 1987, writ ref'd n.r.e.); *see Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251–52 (Tex. App.--Houston [14th Dist.] 1999, pet. denied). This court must construe the judgment and any attendant findings of fact and conclusions of law in a way that sustains the

-10-

judgment in nay way that does not do violence to the language used by the trial court. *In re L.A.F.*, 270 S.W.3d 735, 739 (Tex. App.--Dallas 2008, pet. denied); *Leonard*, 731 S.W.2d at 132. Accordingly, the court must assume the trial court determined favorably to the judgment any omitted findings of fact or conclusions of law necessary to the relief ordered. *Leonard*, 731 S.W.2d at 132; *see Vickery*, 5 S.W.3d at 252.

### A. Findings of fact--legal and factual sufficiency

Findings of fact in a bench trial have the same "force and dignity as a jury's verdict upon questions." *Village Place, Ltd. v. VP Shopping, LLC*, 404 S.W.3d 115, 124 (Tex. App.--Houston [1st Dist.] 2013, no pet.) (quoting *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). As a result, the trial court's findings of fact are subject to sufficiency challenges under the same standards that a reviewing court uses in evaluating the sufficiency of evidence to support a jury verdict. *Id.* Unchallenged findings of fact are binding on the parties and on this court. *Id.*

To determine whether legally sufficient evidence supports a challenged finding of fact, the reviewing court considers evidence favorable to the finding if a reasonable fact-finder could consider it, and disregards evidence contrary to the challenged finding unless a reasonable fact-finder could not disregard it. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Village Place*, 404 S.W.3d at 124. A legal sufficiency challenge is sustained only if the record demonstrates: (1) a complete

-11-

absence of evidence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810; *Village Place*, 404 S.W.3d at 124.

In determining whether factually sufficient evidence supports a challenged finding, the reviewing court considers and weighs all of the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Village Place*, 404 S.W.3d at 124 (citing *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.--Houston [1st Dist.] 2007, pet. denied)). **None** of the Siddiqui's issues assail the factual sufficiency of the evidence supporting the trial court's findings, except for the Siddiqui's attack on the scienter element of the fraud findings.

The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Matter of Marriage of Merrikh*, 14-14-00024-CV, 2015 WL 2438770, at *5 (Tex. App.--Houston [14th Dist.] May 19, 2015, n.p.h.) (mem. op.); *Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex. App.--Houston [14th Dist.] 2002, no pet.). Because there is a complete reporter's record in this case, the trial court's findings will not be disturbed if there is any evidence of probative force to support them. *Id.* This court must give effect to the intended findings of the trial

court and affirm the judgment if it can be upheld on any legal theory that finds support in the evidence; this is based upon well-settled Texas law that in a nonjury trial every reasonable inference and intendment supported by the record will be drawn in favor of the trial court's judgment. *Black v. Dallas Cnty. Welfare Unit*, 835 S.W.2d 626, 630 n.10 (Tex. 1992); *Merrikh*, 2015 WL 2438770, at *5. An omitted finding, supported by the evidence, may be supplied by a presumption that it supports the judgment. *Black*, 835 S.W.2d at 630 n.10; *Merrikh*, 2015 WL 2438770, at *5.

### B. Conclusions of law--de novo.

The trial court's conclusions of law are reviewed de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The court must uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Greater Hous. German Shepherd Dog Rescue, Inc. v. Lira*, 447 S.W.3d 365, 370 (Tex. App.--Houston [14th Dist.] 2014, pet. filed). Incorrect conclusions of law will not require a reversal if the controlling findings of fact will support a correct legal theory. *Sears, Roebuck and Co. v. Nichols,* 819 S.W.2d 900, 903 (Tex. App.--Houston [14th Dist.] 1991, writ denied). Conclusions of law are not subject to challenge for factual insufficiency, but the court may review the legal conclusions drawn from the facts to determine their correctness. *Id.* (citing *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.--Houston [1st Dist.] 2007, no pet.)).

The Siddiquis argue that there is legally insufficient evidence to support any element of any of the causes of action adjudged against them--no evidence of duties, no evidence of breaches, and no evidence of damages. Qureshi and Ali will demonstrate that, contained in the four days of trial testimony and hundreds of pages of trial exhibits, there is far more than a scintilla of evidence to sustain the damages assessed against the Siddiquis.

Certain matters raised by the Siddiquis are not addressed because they have no affect on the propriety of the judgment. For instance, the Siddiquis question whether Qureshi and Ali have standing to seeks compensation for the gross overcharges Suncoast (the Siddiquis' construction company) made to Blueline. Because the judgment does not award damages for the overcharges, even if the Siddiquis are correct they judgment will still stand. Similarly, though the trial court found that the Siddiquis were unjustly enriched, no damages were awarded for that cause of action-- whether the trial court's finding was correct will have no effect on the propriety of the judgment (Response to Siddiqui Issue No. 4).

**I.    The trial court's fraud finding is supported by legally sufficient evidence (Response to Siddiqui Issue No. 2).**

  **A.    There is no need for the trial court to make particularized fact findings.**

The Siddiquis state that the trial court issued only "global, generic findings"

about the Siddiquis' fraudulent conduct, and that they requested the court "render additional findings identifying and explaining the misrepresentations and non-disclosures." Siddiqui Br. at 71. It is unclear whether the Siddiquis are claiming that the court's refusal to enter the requested additional findings was error. The court was under no duty to issue evidentiary findings; in other words, it is permissible for the trial court to make findings of fact that are identical to broad-form jury submissions.

Additional findings are not required if the original findings of fact and conclusions of law "properly and succinctly relate the ultimate findings of fact and law necessary to apprise [the party] of adequate information for the preparation of his or her appeal." *Flanary v. Mills*, 150 S.W.3d 785, 792 (Tex. App.--Austin 2004, pet. denied), quoting *In re Marriage of Morris,* 12 S.W.3d 877, 886 (Tex. App.--Texarkana 2000, no pet.) (quoting *Finch v. Finch,* 825 S.W.2d 218, 221 (Tex. App.--Houston [1st Dist.] 1992, no writ)). A trial court's duty to enter additional findings of fact and conclusions of law is finite; that is, it need only enter additional findings and conclusions on ultimate or controlling issues. *In re M.M.M.,* 229 S.W.3d 821, 823 (Tex. App.--Fort Worth 2007, no pet.); *In re Marriage of Jameson,* No. 07–02–00476–CV, 2004 WL 237829, at *1 (Tex. App.--Amarillo 2004, pet. denied). Findings that are evidentiary in nature do not fall within that scope. *In re M.M.M.,* 229 S.W.3d at 823; *In re Marriage of Jameson,* 2004 WL 237829, at *1. Thus, ultimate or controlling issues or facts are those essential to the cause of action or

defense. *In re M.M.M.,* 229 S.W.3d at 823; *In re Marriage of Jameson,* 2004 WL 237829, at *1. If the fact is necessary to form the basis of the judgment, then it is an ultimate or controlling one. *In re M.M.M.,* 229 S.W.3d at 823; *In re Marriage of Jameson,* 2004 WL 237829, at *1.

In contrast, an evidentiary fact is one that may be considered by the factfinder in deciding the controlling issue and is necessarily embraced in the determination of the ultimate issue. *In re M.M.M.,* 229 S.W.3d at 823; *In re Marriage of Jameson,* 2004 WL 237829, at *1. For example, requests that, in essence, ask the court to explain what it relied on or how it arrived at a particular finding are evidentiary and need not be addressed by the trial court. *In re M.M.M.,* 229 S.W.3d at 823; *In re Marriage of Jameson,* 2004 WL 237829, at *1. The ultimate or controlling issue or fact here is whether fraud was committed. The trial court in its findings did address the ultimate or controlling issue or fact. *See In re M.M.M.,* 229 S.W.3d at 823; *In re Marriage of Jameson,* 2004 WL 237829, at *1. In contrast, the Siddiquis' proposed findings, which address how or why the trial court resolved the ultimate or controlling fact issue in a particular way, are merely evidentiary and need not be entered by the trial court. *See In re M.M.M.,* 229 S.W.3d at 824 (holding that father's proposed additional findings addressing why the trial court found that termination of mother's rights was not in the children's best interest was merely evidentiary and thus, the trial court had no duty to enter them); *In re Marriage of Jameson,* 2004 WL 237829, at *2

(holding that mother's proposed finding that simply addressed how or why the trial court concluded that it was in the child's best interest for the father to designate the primary residence of the child was merely evidentiary and need not be entered by the trial court).

**B.      The Siddiquis owed Qureshi and Ali a duty to disclose material facts, and breached that duty.**

A failure to disclose information will not support a fraud finding in the absence of evidence of a duty to disclose. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998). The existence of a duty to disclose is a matter of law for the court to decide. *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex. 2001); *Rivers v. Charlie Thomas Ford, Ltd.,* 289 S.W.3d 353, 359 (Tex. App.--Houston [14th Dist.] 2009, no pet.). A duty to disclose may arise

(1)    when the parties have a confidential or fiduciary relationship;

(2)    when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth;

(3)    when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or

(4)    when one party makes a partial disclosure and conveys a false impression, which gives rise to a duty to speak.

-17-

*White v. Zhou Pei*, 452 S.W.3d 527, 538 (Tex. App.--Houston [14th Dist.] 2014, no pet.), citing *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,* 237 S.W.3d 379, 385 (Tex. App.--Houston [14th Dist.] 2007, no pet.). To support an action for fraud by nondisclosure, the concealed information must be material. *Bradford,* 48 S.W.3d at 754-55. Information is considered "material" if it is such that a reasonable person would attach importance to it and would be induced to act on it in determining his choice of actions in the matter. *White*, 452 S.W.3d at 538; *Citizens Nat'l Bank v. Allen Rae Invs., Inc.,* 142 S.W.3d 459, 478-79 (Tex. App.--Fort Worth 2004, no pet.) (citing *Am. Med. Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 338 (Tex. App.--Houston [14th Dist.] 1991, no writ)).

As discussed below, the Siddiquis owed Qureshi and Ali fiduciary duties. *See* infra § II(A). That alone is enough to trigger a duty to disclose. But that duty was also triggered by the Siddiquis' partial disclosures, and their learning of new information related to earlier disclosures. Take, for instance, the Siddiquis' discussion of whether they misrepresented the ownership of the Bammel tract. *See* Siddiqui Br. at 76-80. The Siddiquis claim they represented only that they "owned" the property, and did not represent that they had title to it. The disclosure of the general ownership of the property is just a partial disclosure, which triggered the duty to disclose the rest of the story--who held legal title, and how it might be transferred into an entity in which Qureshi and Ali were participating. So, while the statement

that the Siddiquis "owned" the property technically may not have been a misrepresentation, it did trigger the duty to disclose other material facts relating to the title. The Siddiquis breached that duty, to the detriment of Qureshi and Ali.

## C. The Siddiquis made multiple misrepresentations or nondisclosures to Qureshi and Ali, causing damages.

During the entire course of their business relationship, the Siddiquis' behavior toward Qureshi and Ali was shot through with misrepresentations, nondisclosures, and generally oppressive and hostile conduct. Any small sample of would be sufficient to defeat the Siddiquis' multifarious legal sufficiency challenges; this is a digest of some of the more notable examples:

- misrepresentation or nondisclosure of title ownership of the Bammel property. Siddiqui Br. at 79-80, RR 2:65, RR 3:47; RR 4:175-78.

- misrepresentation or nondisclosure of the costs of finishing construction on the Bammel property. RR 3:54-106; RR 4:178-82; RR 5:132-33.

- misrepresentation or nondisclosure of the cost of construction at the Antoine location. RR 3:106-150, 178-90 (particular misrepresentations in lien waivers, signed by subcontractors who never worked on the job); RR 4:4-66 (particular misrepresentations on spreadsheets--entries did not have corresponding checks), 195-97; RR 5:138-46 (FF&E misrepresentations).

- misrepresentation or nondisclosure of the size of the Antoine building. RR 3:111-27; RR 5:150-51.

- misrepresentation or nondisclosure regarding progress payments to Southwestern Bank and false statements on "bills paid" affidavits. RR 3:147-77.

- misrepresentation or nondisclosure regarding bank payment being made to Najeeb Siddiqui on behalf of Blueline, then transferred to Suncoast or Ajaz Siddiqui to pay Suncoast invoices, none of which were provided to Qureshi or Ali.  RR 5:137-38, 153-55.

**D.    Qureshi and Ali established the Siddiquis' scienter with circumstantial evidence.**

It is well-established that a plaintiff required to prove the state of mind of a defendant need not adduce direct evidence; it may instead rely upon circumstantial evidence.  *See Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002) (discussing "malice" in a defamation case: "The defendant's state of mind can--indeed, must usually--be proved by circumstantial evidence."); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22–23 (Tex. 1994) (discussing evidence of gross negligence as predicate for exemplary damages and stating, "We hereby reaffirm our holding that the defendant's subjective mental state can be proven by direct or circumstantial evidence.")*; Behee v. Mo. Pac. Ry. Co.*, 71 Tex. 424, 429, 9 S.W. 449 (1888) ("Malice is rarely ever shown by direct evidence. It is commonly a state of mind indicated and inferable from other facts proved,--from language used, or acts, or both together.  We infer a bad motive when an injurious act is intentionally done without legal excuse.  The motive is not a bare fact of itself, susceptible of proof like any other fact; it is a conclusion deduced from acts or words."); *Turner v. Franklin*, 325 S.W.3d 771, 783 (Tex. App.--Dallas 2010, pet. denied) (noting issues of state of mind "are not susceptible to being readily controverted and are best left to the

determination of the trier of fact"); *French v. French*, 385 S.W.3d 61, 69 (Tex. App.-- Waco 2012, pet. denied) (citing *Digby v. Texas Bank*, 943 S.W.2d 914, 922 (Tex. App.--El Paso 1997, writ denied) ("[Malice] is proved by direct or (usually) circumstantial evidence.").

Part of the determination of a defendant's state of mind is an assessment of the defendant's credibility; this determination is left to the trial court as the fact-finder. *See Volume Millwork, Inc. v. West Houston Airport Corp.*, 218 S.W.3d 722, 730 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). The trial court can combine that assessment with the circumstantial evidence adduced by the claimant to find a particular state of mind or scienter. *James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.*, 403 S.W.3d 360, 369-70 (Tex. App.--Houston [1st Dist.] 2013, no pet.).

The trial court was able to assess the Siddiquis' credibility and demeanor. That assessment, couple with the litany of misrepresentations and nondisclosures described above in section I(C), led the trial court to find scienter as an element of fraud--that the sheer volume and consistency of the Siddiquis' misrepresentations and nondisclosures demonstrates that they were intentional. There is thus legally and factually sufficient to support the trial court's finding.

**II.** **The trial court's finding of a breach of fiduciary duties is supported by more than a scintilla of evidence (Response to Siddiqui Issue No. 1).**

The trial court found that the Siddiquis breached the fiduciary duties they owed Qureshi and Ali. CR 2:1172. This was based on the parties' informal fiduciary relationship. *Id.* The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) a breach of the duty by the defendant; and (3) injury to the plaintiff or benefit to the defendant because of the defendant's breach. *See Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999); *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.-Houston [14th Dist.] 2008, pet. denied).

**A.** **The Siddiquis and Qureshi and Ali were in an informal fiduciary relationship.**

Texas courts recognize an informal fiduciary duty that arises from "a moral, social, domestic or purely personal relationship of trust and confidence." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005); *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 287 (Tex. 1998); *see also Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997). "[T]he law recognizes the existence of confidential relationships in those cases 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed.'" *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex. 1992) (quoting *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex. 1980))

Though generally informal fiduciary relationships require that the relationship pre-exist the parties' business relationship, Texas courts have, however, recognized that an informal fiduciary duty may exist between the shareholders in a closely held corporation, depending on the circumstances. *See generally Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006); *Miller v. Miller,* 700 S.W.2d 941, 945–46 (Tex. App.--Dallas 1985, writ ref'd n.r.e.) (stating that shareholders' intimate knowledge of company's affairs supported finding a fiduciary relationship); *Tuck v. Miller,* 483 S.W.2d 898, 905 (Tex. Civ. App.--Austin 1972, writ ref'd n.r.e.) (op. on reh'g) (holding that superior business expertise, among other factors, supported a finding of a confidential relationship); *see also Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 391 (Tex. App.--Houston [1st Dist.] 2012, judgm't set aside by agr.) (op. on reh'g) (recognizing a *formal* fiduciary duty between co-shareholders of an LLC in the context of a redemption where the majority ownership interest had dominant control over the operation and management of the business); *Vejara v. Levior lnt'l LLC,* No. 04–11–00595–CV, 2012 WL 5354681, at \*5 (Tex. App.--San Antonio Oct. 31, 2012, pet. denied) (mem. op.) (holding that "Vejara's control and intimate knowledge of the company's affairs and plans gave rise to the existence of an informal fiduciary duty to Levior"). In particular, when certain shareholders retain " sole and exclusive control of the management, business and affairs" of the company, they owe fiduciary obligations to the shareholders excluded from that

control. *Guevara v. Lackner*, 447 S.W.3d 566, 581 (Tex. App.--Corpus Christi 2014, no pet.).

And that is precisely what happened here--the Siddiquis retained sole and exclusive control of Blueline, so that they could hide critical information from Qureshi and Ali. RR 5:15-18, 151-153. This oppressive behavior included self-dealing--the Siddiquis prepared the construction invoices on behalf of Suncoast, then approved them on behalf of Blueline, without ever letting Qureshi and Ali see them.. RR 5:137-38, 153-55. The Siddiquis' challenge to the existence of the fiduciary relationship, and their liability for the breach of that duty, should be overruled.

**B.    Suncoast, too, is liable for the breach of the Siddiquis' fiduciary duties (Response to Siddiqui Issue No. 5).**

The trial court expressly found that "[t]he Siddiquis and Suncoast were engaged in a conspiracy against Qureshi and Ali." CR 1174. "[When] a third party knowingly participates in the breach of a duty of a fiduciary, such party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). *Kinzbach* holds that liability for breach of fiduciary duty may be imposed even in the absence of a fiduciary relationship when a nonfiduciary is knowingly complicit in aiding or inducing a breach of trust. Thus, Suncoast's liability for breach of fiduciary duty is independent of whether Suncoast itself owed a fiduciary duty.

-24-

The Siddiquis challenge the trial court's conspiracy finding solely on the basis that conspiracy requires an underlying wrongful act, and "[b]ecause there was no fraud or breach of fiduciary duty by the Siddiquis or Suncoast, there is no underlying tort and the conspiracy claim fails as a matter of law." Siddiqui Br. at 100-01. The Siddiquis challenge to the conspiracy finding is thus wholly dependent on its liability challenges, and thus need not be addressed separately.

### C. The damages flowing from the breach of fiduciary duty have not been separately challenged.

The Siddiquis' challenge to the damages arising from their breach of the fiduciary duty they owed to Qureshi and Ali is premised entirely on their challenge to the existence of the duty. *See* Siddiqui Br. at 64. Therefore, Qureshi and Ali will not address it separately.

### III. Qureshi and Ali introduced legally sufficient evidence to support an award of restitution damages for the Siddiquis' fraud (Response to Siddiqui Issue No. 3).

Under Texas law, one who is induced by fraud to enter into a contract may elect an equitable remedy of restitution or rescission that would restore him to the position he would have been in had he not been the victim of fraud. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 346 (Tex. 2011) ("When rescission of a lease is appropriate for breach of the implied warranty of suitability, a tenant is entitled to be restored to the position it would have been in

had it not leased the premises that turned out to contain a latent defect rendering the premises commercially unsuitable."); *see also Quigley v. Bennett*, 227 S.W.3d 51, 56-57 (Tex. 2007) (Brister, J., concurring and dissenting) (discussing restitution damages in context of fraud and stating that "restitution can be recovered in fraud cases" but it "is generally not listed, perhaps because it is an equitable rather than a legal remedy, or because it is available even without a showing of fraud"); *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162-63 (Tex. 1992) (holding, in DTPA case, that evidence supported award of damages in total amount of plaintiff's capital investment in lease venture for beauty shop, minus amount plaintiff received back from venture, including money received when plaintiff sold beauty shop business, as part of plaintiff's "actual loss" even though plaintiff did not present evidence to support "out-of-pocket" or "benefit-of-the-bargain" measure of damages); RESTATEMENT (FIRST) OF RESTITUTION § 152 (1937) ("Where a person is entitled to restitution from another because the other has obtained his services, or services to which he is entitled, by fraud, duress or undue influence, the measure of recovery for the benefit received by the other is the market value of such services irrespective of their benefit to the recipient.") (quoted in *Quigley,* 227 S.W.3d at 56 n.8 (Brister, J., concurring and dissenting)).

"'[R]estitution' . . . means the act of restoring or a condition of being restored." *Cruz v. Andrews Restoration, Inc.,* 364 S.W.3d 817, 825 (Tex. 2012). Restitution is

generally defined as an equitable remedy under which a person is restored to his or her original position before the loss or injury. *In re J.R.,* 907 S.W.2d 107, 109 (Tex. App.--Austin 1995, no writ). Restitution "involves restoring property or money taken from the plaintiff," and, "[u]nlike other contractual damages, restitution focuses on forcing the defendant to disgorge benefits that it would be unjust to keep, rather than on compensating the plaintiff." *City of Harker Heights v. Sun Meadows Land, Ltd.,* 830 S.W.2d 313, 317 (Tex. App.--Austin 1992, no writ). "'[R]escission is one of the principal asset-based remedies in restitution,' and it 'restore[s] the parties to the status quo ante by unwinding the contractual exchange instead of pressing it forward.'" *Cruz,* 364 S.W.3d at 825 (quoting RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 37, cmt. a). "Rescission is a form of restitution that applies if the transaction may still be unwound; if it cannot, a plaintiff may sue for damages." *Id.*

The First Court of Appeals once framed its discussion of this restitutional measure of damages in the context of an election of remedies

> In addition to these alternative measures of damages, [the out-of-pocket measure and the benefit-of-the-bargain measure], Texas courts have long held under general principles of common-law fraud that one who is induced by fraud to enter into a contract has a choice of remedies: he may either recover the monetary damages flowing from the fraud or he may elect the equitable remedy of rescission in lieu of damages and demand a return of any amount paid. This election of remedies recognizes that, depending on the circumstances, a defrauded party may

not be made w hole by a recovery of actual damages, but instead may need an equitable remedy such as rescission.

*Nelson v. Najm*, 127 S.W.3d 170, 176 (Tex. App.--Houston [1st Dist.] 2003, pet. denied) (internal citations omitted). Recently, the Texas Supreme Court has reaffirmed that "[r]escission is an equitable remedy and, as a general rule, the measure of damage is the return of the consideration paid, together with such further special damage or expense as may have been reasonably incurred by the party wronged on account of the contract." *Italian Cowboy,* 341 S.W.3d at 345.

As a result of the Siddiquis' fraudulent conduct, Qureshi and Ali were induced to invest $212,500 apiece in a venture that turned out to be worthless. They also made another $89,482.68 in payments they would not have made absent the initial fraud. RR 4:155-56; RR 5:6, 18-19. Under Texas law, they are entitled to be placed in the position they would have been had the fraud not occurred, so they are entitled to $514,482.68 in restitution damages. The Siddiquis' challenge to the damage award should thus be overruled.

## IV. Exemplary damages were properly awarded (Response to Siddiqui Issue No. 6).

The Siddiquis' challenge to the trial court's award of exemplary damages is premised entirely on their challenge to the underlying liability findings. Siddiqui Br. at 101-02. Accordingly, Qureshi and Ali will not address it separately.

-28-

**V.** **The Siddiquis are not entitled to a judgment in their favor (Response to Siddiqui Issue No. 7).**

"[F]raud vitiates whatever it touches[.]" *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 809 (Tex. 1979); *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 368 (Tex. App.--Houston [1st Dist.] 2012, pet. granted, j'ment set aside, remanded by agmt.). The Siddiquis lost money on the venture they fraudulently induced Qureshi and Ali to join; the Siddiquis' fraud vitiates the Siddiquis' purported right to transfer some of their losses to Qureshi and Ali. The Siddiquis' issue on the trial court's refusal to award them damages should thus be overruled.

## CONCLUSION AND PRAYER

The Siddiquis' scattershot attack on the trial court's judgment has failed to hit its mark. Qureshi and Ali adduced legally (and factually) sufficient evidence of the duties owed by the Siddiquis, the Siddiquis' repeated breaches of those duties, and of the restitution damages to which Qureshi and Ali are entitled. Qureshi and Ali therefore pray this court affirm the judgment of the trial court, and for such other and further relief to which they may be entitled.

Respectfully submitted,

**KELLY, DURHAM & PITTARD, L.L.P.**

BY:   /s/ Peter M. Kelly
Peter M. Kelly (Lead Counsel)
State Bar No. 00791011
1005 Heights Boulevard
Houston, Texas 77008
Telephone: 713.529.0048
Facsimile:  713.529.2498
Email: pkelly@texasappeals.com

***Counsel for Appellees***

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirement of TEX. R. APP. P. 9.4(e) because it has been prepared in conventional typeface no smaller than 14-point for text and 13-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i) because it contains **7,320** words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

 /s/ Peter M. Kelly
Peter M. Kelly

## CERTIFICATE OF SERVICE

A true and correct copy of this *Appellees' Brief* has been forwarded to all counsel of record on June 26, 2015, as follows:

Vincent L. Marable III                                     *Via Facsimile: 979.532.5331*
PAUL WEBB, P.C.
221 N. Houston
Wharton, Texas 77488
trippmarable@sbcglobal.net


Ted A. Cox
TED A. COX, P.C.
1225 W. 34th Street
Houston, Texas 77018
ted@tedacox.com

James E. Bradley
BRADLEY LAW FIRM
5718 Westheimer, Ste 1525
Houston, Texas 77057


                                     /s/ Peter M. Kelly
                                     Peter M. Kelly